**Frieda MILLER, Plaintiff–Appellant,**

v.

**PRUDENTIAL BACHE SECURITIES, INC., and Samuel Kaplan, Defendant–Appellee.**

No. 88–2179.

United States Court of Appeals, Fourth Circuit.

Argued May 8, 1989.

Decided Aug. 29, 1989.

Rehearing and Rehearing In Banc Denied Oct. 10, 1989.

Lois F. Lapidus (Lapidus & Lapidus on brief), for plaintiff-appellant.

Maurice Robert Dunie (Patricia E. Connelly, Bulman, Dunie, Burke & Feld, Chartered on brief), for defendant-appellee.

Before ERVIN, Chief Judge, CHAPMAN, Circuit Judge, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.

ERVIN, Chief Judge:

Frieda Miller appeals from a grant of summary judgment in favor of Prudential Bache Securities, Inc. on her motion to vacate an arbitrator's award. The district court found that the arbitrator's decision

regarding the applicable statute of limitations is not subject to review in the federal courts. The lower court also held that the arbitration clause itself does not constitute an invalid waiver of appellant's rights, and that it was not fraudulently induced. We agree, and affirm.

In October, 1976, the plaintiff-appellant, Frieda Miller, entered into a written "customer agreement" with defendant-appellee Prudential Bache Securities ("Bache") for investment in "naked options." [1] The agreement contained an arbitration clause, which provides in relevant part:

> Any controversy arising out of or relating to my account, to transactions with or for me or to this agreement or the breach thereof, shall be settled in accordance with the rules then obtaining of either the American Arbitration Association or the Board of Governors of the New York Stock Exchange as I may elect, except that any controversy rising out of or relating to transactions in commodities or contracts relating thereto, whether executed within or outside of the United States shall be settled by arbitration in accordance with the rules then obtaining of the Exchange (if any) where the transaction took place, if within the United States, and provided such Exchange has arbitration facilities or under the rules of the American Arbitration Association as I may elect.

In May, 1978, Miller sustained losses in excess of one million dollars as a result of her trading in naked options. In December, 1983, Miller filed an arbitration claim with the National Association of Securities Dealers ("NASD"), a New York based organization. Bache acquiesced to Miller's wish to file with NASD, rather than one of the organizations specified in the contract. Miller's decision was apparently prompted by the fact that the NASD would hold hearings in Baltimore, her city of residence, whereas neither the New York Stock Exchange ("NYSE") nor the American Arbitration Association would.

A hearing was held before five NASD arbitrators in June, 1985. The arbitration panel unanimously granted appellees' motion to dismiss the claims, on the grounds that they were barred by Maryland's three year statute of limitations period. Although their decision did not specifically say so, apparently the arbitrators applied Maryland's statute of limitations after applying New York's "borrowing statute," which provides:

> An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

N.Y. CPLR § 202.

Miller subsequently filed an Application to Vacate the Arbitrator's Award in the United States District Court for the District of Maryland. The lower court granted summary judgment against Miller on the grounds that the arbitrator's decision contained no basis for vacating the dismissal, and that there existed no evidence to support Miller's assertion that the arbitration clause itself was void.

## I. *The Arbitrators' Award*

Miller seeks to have the panel's decision vacated under 9 U.S.C. § 10(d), which provides that an arbitration award may be set aside:

> Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

Miller contends that the arbitration panel exceeded the scope of its authority by rely-

---

1. In a naked option transaction, one party sells to another options contracts, granting the buyer the right to purchase a particular stock at a price lower than the current trading price of that security. The seller of the option, however, does not own the underlying stock. Therefore, if the purchasing party elects to exercise his option, the seller is required to purchase the stock, usually at a higher price than the optionee is required to pay.

ing on the New York borrowing statute to determine the applicable statute of limitations period. She claims that, in the event of arbitration, the parties contemplated that the arbitrating body would apply its own procedural rules. Miller also asserts that the stipulation that New York law would govern the customer agreement referred only to matters of substantive law, and that therefore the parties did not intend their choice of law provision to include New York's borrowing statute. Instead, Miller argues, the panel should have used the NASD's rules to determine the timeliness of her action. Under those rules, which allow six years to begin arbitration provided "no extension of [the] applicable statute of limitations occurs," Miller would have been allowed to proceed with her action.

Miller further argues that even if the choice of law provision did include the borrowing statute, that statute cannot apply to "non-statutory"—i.e., privately agreed upon—arbitration, under the provisions of the New York Arbitration Article.

Finally, Miller asserts that if the panel reached the Maryland statute of limitations through Rule 15 of the NASD Code of Arbitration procedure, the arbitrators still exceeded their authority. Rule 15 provides:

> No dispute, claim or controversy shall be eligible for submission to arbitration under this Code in any instance where six (6) years shall have elapsed from the occurrence or event giving rise to the act or dispute, claim or controversy. This section shall not extend applicable statutes of limitations.

Because the parties contemplated that the panel would apply its own procedural rules, Miller reasons, the applicable statute of limitations is in fact the six year period provided for in Rule 15. Furthermore, Miller claims, even if Rule 15 was intended to incorporate state statutes of limitations, the correct limitations period in this case is that provided by New York—six years. Miller asserts that the New York limitations period would apply here because the NASD is a New York based organization,

and that therefore the "situs" of the arbitration forum was New York.

Miller's argument that the panel erroneously applied the Maryland statute of limitations amounts to an assertion that the panel either: (1) misinterpreted the customer agreement, by holding that the choice of law clause incorporated the borrowing statute; (2) misapplied the borrowing statute; or (3) misinterpreted its own rules by holding that the "applicable statute of limitations" referred to in Rule 15 included, in this case, the Maryland statute. Even if it exists, however, such misinterpretation or misapplication simply does not constitute grounds for vacating an arbitrator's decision.

Over three decades ago, the Supreme Court held that a contention that "the arbitrators misconstrued a contract is not open to judicial review" under § 10(d) of the Federal Arbitration Act. *Bernhardt v. Polygraphic Co. of America, Inc.*, 350 U.S. 198, 203 n. 4, 76 S.Ct. 273, 276 n. 4, 100 L.Ed. 199, 205 n. 4 (1956). The federal courts, including this one, have unwaveringly followed this rule, and have consistently held that contract misconstruction is an insufficient basis for vacating an arbitration award. *See, e.g., National R.R. Passenger Corp. v. Chesapeake & Ohio Ry. Co.*, 551 F.2d 136, 142 (7th Cir.1977) (arbitrators do not exceed their powers by misconstruing a contract, even if their interpretation is, in the eyes of the reviewing court, clearly erroneous); *Textile Workers Union of America v. American Thread Co.*, 291 F.2d 894, 896 (4th Cir.1961) (misinterpretation of the contract giving rise to the arbitration will not vitiate the award).

Even if Miller's argument is that the panel either misinterpreted or misapplied the applicable law—in this case either the borrowing statute or Rule 15—there still exists no basis for overturning the panel's decision. Once again, federal courts have consistently held that they will not "set aside an arbitrator's award for mere errors of law." *Textile Workers Union of America, supra,* at 896. *See also Revere Copper and Brass, Inc. v. Overseas Inv. Corp.*, 628 F.2d 81 (D.C.Cir.1980) (arbitra-

tors' award will not be set aside for failure to apply the traditional rules of contract construction); *Office of Supply, Gov. of Republic of Korea v. New York Naval Co.*, 469 F.2d 377, 379 (2d Cir.1972) ("An award will not be set aside because of an error on the part of the arbitrators in their interpretation of the law."); *National R.R., supra*, at 143 ("It is well settled that an arbitrators' award will not be vacated on the grounds that the arbitrators misinterpreted applicable law.").

## II. *Validity of the Arbitration Agreement*

Miller next contends that the arbitration agreement itself is void, because it constitutes an illegal waiver of her substantive rights to the protection of the anti-fraud rules the exchanges are required to promulgate under the 1934 Securities Exchange Act ("the 1934 Act"), 15 U.S.C. § 78a. Section 78f(b)(5) of Title 15 requires all national securities exchanges to promulgate rules "designed to prevent fraudulent and manipulative acts and practices," and to "protect investors and the public interest." Section 78cc(a) of Title 15 provides:

> Any condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void.

The transactions underlying the dispute in this case occurred on the Chicago and Philadelphia option exchanges. The Chicago exchange's anti-fraud provision is Rule 9.7(c) of the exchange, which states:

> Within 15 days after a customer's account has been approved for options transactions, a member organization shall obtain from the customer a written agreement that the account shall be handled in accordance with the Rules of the Exchange and the Rules of the Clearing Corporation and that such customer, acting alone or in concert with others, will not violate the position or exercise limits set forth in Rules 4.11 and 4.12.

Miller argues that because the arbitration clause did not expressly provide that disputes would be handled in accordance with the anti-fraud rules of the *options* exchanges—as opposed to the *commodities* exchanges—it failed to satisfy the "written agreement" requirement of Rule 9.7. Therefore, she claims, the agreement amounted to a waiver of her right to the protection of 15 U.S.C. § 78f(b)(5), which requires the promulgation of the anti-fraud rules.

Miller also asserts that the NASD rules themselves preclude the application of any anti-fraud provisions. The NASD's anti-fraud rules are set forth in Appendix E of the NASD Manual—Rules of Fair Practice. The applicability provision of these rules states:

> The Rules in this Appendix E shall be applicable (1) to the extent appropriate unless otherwise stated herein, to the conduct of accounts, the execution of transactions, and the handling of orders in exchange listed options by members who are not members of an exchange on which the option executed is listed; (2) to the extent appropriate unless otherwise stated herein, to the conduct of accounts, the execution of transactions, and the handling of orders in conventional options; and (3) other matters related to options trading.

Miller claims that because Bache is a member of the Chicago and Philadelphia options exchanges, the NASD anti-fraud rules cannot apply to her action. Furthermore, because the agreement provides that arbitration will be handled in accordance with the rules of the arbitration forum—in this case the NASD—it also precludes the application of the Chicago and Philadelphia exchanges' anti-fraud rules.

■ The Supreme Court recently held that a predispute agreement to arbitrate claims arising under the 1934 Act does not violate 15 U.S.C. § 78cc, and will be enforced, provided that arbitration will be adequate to vindicate a plaintiff's rights under the 1934 Act. *See Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 2343, 96 L.Ed.2d 185,

199 (1988). The district court found that the arbitration clause in question met this test, as it did not waive any of the substantive rights afforded Miller by the 1934 Act. We are persuaded by the district court's rationale, and we adopt it here. The court first found that the provision that arbitration was to be conducted in accordance with the rules of the arbitration forum governed *only* arbitration procedure, and "not the substantive rules that may bear on the merits of the underlying dispute." Thus, if Bache's conduct violated the anti-fraud provisions of either the Chicago or the Philadelphia option exchanges, the NASD panel would have been free to consider that fact. The court further reasoned that the possible inapplicability of the NASD anti-fraud rules to Bache because of its membership on the Chicago and Philadelphia exchanges would not preclude the NASD panel from considering the Chicago and Philadelphia anti-fraud rules when adjudicating a claim.

Finally, the court observed that the arbitration agreement itself expressly provides for "arbitration in accordance with the rules then obtaining of either the American Arbitration Association or the Board of Governors of the [NYSE]." There is no evidence that the rules of either of those organizations would interfere with Miller's right to the protection of the option exchanges' anti-fraud rules. Thus, we agree with the lower court's conclusion that "neither the arbitration clause as originally written nor the subsequent agreement to submit the dispute to the NASD operated as a waiver of [Miller's] right to the protection of the anti-fraud rules."

We also note that at least two other cases, including *McMahon*, have upheld the validity of arbitration clauses virtually identical to the one at issue in this case. Although those cases did not expressly address the question of whether the arbitration agreement waived a customer's rights under the 1934 Act, the fact that those clauses were deemed sufficient to vindicate the plaintiffs' rights under that statute, and were therefore enforceable, is instructive. In *McMahon*, the arbitration clause provided that all disputes "shall be settled by arbitration in accordance with the rules, then in effect, of the [NASD] or the Board of Directors of the [NYSE] and/or the American Stock Exchange, Inc., as [the customer] may elect." 482 U.S. at 222, 107 S.Ct. at 2335, 96 L.Ed.2d at 191. In *Phillips v. Merrill Lynch, Pierce, Fenner and Smith*, 795 F.2d 1393 (8th Cir.1986), the Eighth Circuit enforced an arbitration clause in an "Option Agreement" which stated that any controversy would be settled by arbitration before the NASD, the NYSE, or "an Exchange located in the United States upon which listed options transactions are executed."

■ Miller also argues that the arbitration agreement is void because it was procured by fraud on the part of Bache. Miller bases her claim of fraudulent inducement on Bache's failure to advise her of: (1) the *Wilko* doctrine, holding that predispute agreements to arbitrate a claim under the Securities Act of 1933 are enforceable, *Wilko v. Swann*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953); (2) the rules of the various options exchanges and their arbitration facilities; and (3) the existence of the NASD. Miller sought discovery of documents to prove Bache's failure to provide information regarding these subjects, but Bache refused to cooperate and the district court denied Miller's motion to compel discovery of the material.

The district court rejected Miller's assertion that Bache's failure to advise her in any of these three areas constituted potential grounds for a fraudulent inducement claim. Once again, we find the reasoning of the district court persuasive.

With respect to the *Wilko* doctrine, Judge Murray held that even if Bache was required to provide Miller with legal advice, it was certainly under no obligation to advise her of a legal doctrine whose applicability to her situation "was at best questionable." At the time the contract in question was made, the Supreme Court had yet to rule that claims arising under the 1934 Act could be subject to a predispute agreement to arbitrate.

Additionally, the district court found that Bache had no duty to advise Miller of either the rules of the various option exchanges and their arbitration facilities, or the existence of the NASD. The court noted that there existed no evidence as to how this information would have affected Miller's decision to accept the arbitration agreement.

Finally, and most persuasively, Judge Murray pointed out that Miller herself chose the NASD as the arbitration forum. Because this was not one of the forums specified in the arbitration clause itself, we agree with the district court that, "[i]t is therefore difficult to perceive how she was fraudulently induced to submit to arbitration before the NASD panel when she elected it."

For the reasons set forth above, the decision of the district court granting summary judgment in favor of Prudential Bache Securities, Inc. and Samuel Kaplan [2] is hereby

AFFIRMED.

---

**2.** Samuel Kaplan is the former Bache employee who handled Miller's accounts with the firm.

Miller filed a single action against both Bache and Kaplan.