**MERRILL LYNCH, PIERCE, FENNER & SMITH INC., a corporation, Plaintiff,**

v.

**Edward C. JANA and Lucille Jana, Defendants.**

No. 93 C 1221.

United States District Court, N.D. Illinois, E.D.

Sept. 21, 1993.

Peter A. Cantwell, Stephen Falk Boulton, Cantwell & Cantwell, Chicago, IL, for plaintiff.

Cary Neal Goldberg, Peter Ordower, Ronald Alan Schy, Beigel & Sandler, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

Edward C. Jana and his elderly mother Lucille Jana made several investments through Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"). The Janas invested in a series of limited partnerships that eventually resulted in substantial financial loss and a dispute with Merrill Lynch over who was to bear that loss. Pursuant to customer agreements with Merrill Lynch, the Janas sought to arbitrate the dispute before the National Association of Securities Dealers, Inc. ("NASD"). They filed a Statement of Claim and Demand for Arbitration with NASD on June 25, 1992. On February 26, 1993, Merrill Lynch filed this action seeking injunctive relief with respect to elements of the Janas' requested arbitration.

Before the Court are two related motions. Merrill Lynch has filed a Motion for Injunctive Relief based upon their Complaint and the Janas have filed a Motion to Dismiss Complaint and to Compel Arbitration.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1983 and 1986 respectively, Lucille Jana and her son Edward C. Jana opened accounts with the Naperville, Illinois office of Merrill Lynch. In opening their accounts, the Janas signed similar customer agreements, each of which stated, in part: (1) that the agreements were governed by the laws of the State of New York and, (2) that any controversy between the contracting parties would be conducted pursuant to the provisions of either the Constitution and Rules of the Board of Governors of the New York Stock Exchange, Inc. (the "NYSE Rules") or the Code of Arbitration Procedure of the National Association of Securities Dealers, Inc. (the "NASD Code"), at the Janas' election.

As a result of the dispute leading to this case, the Janas filed a Statement of Claim and Demand for Arbitration before NASD on June 25, 1992 and thereby decided that this controversy would be governed by the NASD Code. In their Statement of Claim, the Janas alleged that they had been fraudulently misled by their Merrill Lynch account executive, Mr. Paul E. Waigand, with respect to the nature of six limited partnership investments in which, at Waigand's direction, they invested. In their Statement of Claim the Janas sought to impose joint and several liability on Merrill Lynch and Waigand for losses resulting from the investments. Additionally, the Janas made a demand for an award of punitive damages.

On July 23, 1992, Merrill Lynch filed suit in the Supreme Court of the State of New York, seeking an order barring arbitration of several of the Janas claims and of their request for punitive damages. On November 30, 1992, the Honorable Edith Miller dismissed Merrill Lynch's petition for lack of personal jurisdiction over the Janas. After Judge Miller's decision NASD ordered Merrill Lynch and Waigand to file Answers and Submission Agreements in the arbitration. Merrill Lynch filed this action on February 26, 1993 and, on May 27, 1993, this Court entered an agreed order staying the arbitration proceedings pending resolution of the issues now presented.

### ANALYSIS

The parties agree that, pursuant to the original customer agreements signed by the Janas, this case is governed by the law of the State of New York to the extent that it is not preempted by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* [1]

Also pursuant to their customer agreements, the Janas had the right to elect whether to arbitrate their dispute with Merrill Lynch under the Constitution and Rules

---

1. As the Court's later discussion of punitive damages indicates, the parties disagree over whether the FAA preempts New York State law with respect to the Janas' demand for such damages.

of the Board of Governors of the New York Stock Exchange, Inc. or under the Code of Arbitration Procedure of the National Association of Securities Dealers, Inc. Having chosen to arbitrate this case with NASD, the Janas have chosen that the case be governed by the NASD Code as well. In its Complaint seeking injunctive relief, Merrill Lynch seeks to enjoin two separate elements of the Janas' arbitration claim: certain compensatory claims that it argued to be ineligible for arbitration and the Janas request for punitive damages. Merrill Lynch first argues that Section 15 of the NASD Code prevents the arbitration panel from hearing certain ineligible claims made by the Janas (the "eligibility issue"). Next, Merrill Lynch argues that New York law bars the arbitration panel from imposing punitive damages (the "punitive damages issue"). The Court addresses these elements separately.

### 1. Eligibility

■ With respect to the eligibility issue, Section 15 of the NASD Code is central to the resolution of both motions now before the Court. Section 15 says:

No dispute, claim, or controversy shall be eligible for submission to arbitration under this Code where six (6) years shall have elapsed from the occurrence or event giving rise to the act or dispute, claim or controversy. This Section shall not extend applicable statutes of limitations, nor shall it apply to any case which is directed to arbitration by a court of competent jurisdiction.

It is apparent that the Janas' Statement of Claim, with respect to two of the Janas' limited partnership investments, was made more than six years after the date of investment.[2] In its Motion for Injunctive Relief Merrill Lynch contends that Section 15 of the NASD Code renders ineligible two of the Janas' claims for compensatory damages. In rebuttal, the Janas contend that any such

issue should be decided by the NASD arbitration panel and not this Court. This argument is the crux of the Janas' Motion to Dismiss.

In support of their Motion to Dismiss Merrill Lynch's Section 15 claims, the Janas assert that, under New York law, the application of the NASD Code, and thus Section 15, should be decided by the arbitrators, not the Court. Under the New York Court of Appeals case *County of Rockland v. Primiano Const. Co.*, 51 N.Y.2d 1, 431 N.Y.S.2d 478, 409 N.E.2d 951 (1980), this argument depends on whether Section 15 is to be construed as a "condition precedent to arbitration" or as a "procedural stipulation."

■ According to the New York Court of Appeals, on motions to stay or to compel arbitration there are three threshold questions to be resolved by the courts: (1) whether the parties made a valid agreement to arbitrate; (2) if made, whether such an agreement was complied with; and (3) if the agreement was made and complied with, whether a claim under the agreement would have been barred by a statute of limitations if brought in state court. *Id.* at 953.

■ When, as here, the second of these questions is at issue, Courts must distinguish between "conditions precedent to arbitration" and "procedural stipulations" laid down by the parties "to be observed in the conduct of the arbitration proceeding itself." *Id.* at 954. The former are "precondition[s] to access to the arbitral forum" to be determined by the courts; the latter are rules governing the arbitration itself and thus are to be interpreted by the arbitrator "as incidental to the conduct of the arbitration proceedings." *Id.* Such a distinction, and the forum in which it is to be interpreted, makes sense. The Courts are to determine what issues are eligible for arbitration; the arbitration panel is to determine how that arbitration will pro-

---

**2.** In their Statement of Claim, the Janas refer to six limited partnerships. The Statement of Claim conspicuously fails to allege a specific date of investment with respect to each partnership. One partnership investment, dated "late 1985", clearly falls without the requirements of Section 15. Since the Janas filed their statement of claim on June 25, 1992, any investment made

prior to June 25, 1986, would not satisfy the requirements of Section 15.

Another partnership, dated "1986", is claimed by Merrill Lynch to have been invested in on April 15, 1986. This date is not disputed by the Janas and thus falls without the requirements of Section 15.

ceed. When there is disagreement over whether a given rule is a precondition or a procedural rule, the courts must analyze the substance of the rule and the function it is perceived to play and then determine into which category the rule falls. *See id.*

With respect to Section 15, the Seventh Circuit has given the district courts clear guidance in interpreting New York State law. Notwithstanding the *Primiano* court's inclusion of "limitations of time within which the demand for arbitration must be made" as an example of a "procedural stipulation", the Seventh Circuit has clearly stated that Section 15's time limitation is to be considered an "eligibility requirement", or a condition precedent. *See PaineWebber Inc. v. Farnam,* 870 F.2d 1286 (7th Cir.1989) (contrasting Section 15, an eligibility requirement, with a statute of limitations, a procedural rule); *see also Edward D. Jones & Co. v. Sorrells,* 957 F.2d 509 (7th Cir.1992) (relying on *Farnam* in concluding that Section 15 was an eligibility requirement). Under *Farnam* and *Sorrells,* Section 15 goes to the "very power" or subject matter jurisdiction, of NASD to arbitrate a claim. *See Sorrells,* 957 F.2d at 512. Under that Section NASD may not process, i.e. has no jurisdiction over, any claim submitted for arbitration more than six years after the "event in dispute." *Sorrells,* 957 F.2d at 512 (citing *Farnam,* 870 F.2d at 1292).

Despite the clear Seventh Circuit authority on this issue, the Janas claim that the decisions in *Farnam* and *Sorrells* should be ignored as wrongly decided. The Court disagrees.

Since the Seventh Circuit's decision in *Sorrells,* two New York State Courts have endorsed either the *Sorrells* or *Farnam* decision. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. DeChaine,* 600 N.Y.S.2d 459 (N.Y.App.Div.1993) (stating that Section 603 of the New York Stock Exchange Arbitration

Rules, which is identical in wording to NASD Code Section 15, is not a statute of limitations but an eligibility requirement); *Prudential Bache Sec. v. Archard,* 179 A.D.2d 652, 579 N.Y.S.2d 890 (1992), *appeal denied,* 80 N.Y.2d 754, 587 N.Y.S.2d 906, 600 N.E.2d 633 (1992) (citing *Farnam* and *Primiano* for statement that the commencement of arbitration proceedings after six years is time barred by NASD Code Section 15). Although all the federal courts are not in consensus on this issue, the *Sorrells* and *Farnam* decisions have been endorsed by the Third and Sixth Circuits. *See PaineWebber Inc. v. Hofmann,* 984 F.2d 1372, 1379 (3d Cir.1993) (citing *Sorrells* and stating that Section 15 can only be read as a substantive limit on the claims that can be submitted to arbitration); *PaineWebber Inc. v. Hartmann,* 921 F.2d 507, 513–514 (3d Cir.1990) (citing *Farnam* and concluding that the district court did not commit clear error in interpreting NYSE Arbitration Rule 603 like Section 15); *Roney & Co. v. Kassab,* 981 F.2d 894, 897 (6th Cir.1992) (adopting the positions of the Third and Seventh Circuits). *But see FSC Sec. Corp. v. Freel,* 811 F.Supp. 439, 442 (D.Minn.1993) (relying on a Fourth Circuit case, *Miller v. Prudential Bache Sec., Inc.,* 884 F.2d 128 (4th Cir.1989), *cert. denied,* 497 U.S. 1004, 110 S.Ct. 3240, 111 L.Ed.2d 751 (1990)).[3]

In the face of this support of *Farnam* and *Sorrells,* the Janas cite several cases distinguishable on the grounds that they are statute of limitations, waiver, or other non-section 15 or NYSE Rule 603 cases.[4] The Janas point to an anomalous case in support their current position: *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Noonan,* 93 Civ. 3770, 1992 WL 196741 (S.D.N.Y. Aug. 3, 1992). This case fails to distinguish, cite or even address any authority directly on point. Instead, the case relies on *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114 (2d

---

**3.** The *Miller* case is easily distinguished, however. There, the Fourth Circuit refused to overturn an arbitration panel's decision to adopt Maryland's three year statute of limitations instead of New York's six years or Section 15's six years. The *Miller* panel did not address the question of whether the panel lacked jurisdiction over the plaintiff's claim. Since the panel offhandedly classified Section 15 as a statute of limitations

and concentrated its discussion on the applicable statute of limitations, it appears that the panel was not aware of the jurisdictional issues presented here.

**4.** NYSE Rule 603 is the equivalent of NASD Code Section 15.

Cir.1991). Although *Wagoner* broadly states that: "any limitations defense—whether stemming from the arbitration agreement, arbitration association rule, or state statue—is an issue to be addressed by the arbitrators", 944 F.2d at 121, the case does not directly address the issues here at hand. To the extent the case conflicts with *Farnam* and *Sorrells*, the Court rejects it as unpersuasive.[5]

■ Accordingly, the Court finds that under Section 15 of the NASD Code, the arbitration panel has no jurisdiction over any claim not submitted to arbitration within six years of the "event or occurrence" leading to the dispute. The Court now turns to determining what constitutes an "event or occurrence" for the purposes of the case at hand. The case of *Edward D. Jones & Co. v. Sorrells*, 957 F.2d 509 (7th Cir.1992) is directly on point.

In *Sorrells*, the Seventh Circuit implicitly held that, for the purpose of NASD Code Section 15, an "event or occurrence" is the date of investment. The Court stated:

> More than six years elapsed from the date the Sorrells made the last of the ten investments which gave rise to their claims ... Thus, the Sorrells' arbitration claims were not timely filed under Section 15.

*Sorrells*, 957 F.2d at 512. According to Merrill Lynch two of the limited partnership investments complained of by the Janas were invested in more than six years before their claims were submitted to arbitration. The two investments were made on April 4, 1985 and April 15, 1986.[6] Since the claims regarding these investments were submitted to NASD on June 25, 1986, they are both untimely.

[7] The Janas contend that the date of investment should not be used for measuring timeliness because Merrill Lynch and Waigand "fraudulently concealed" the nature of

the investment and the harm incurred. Similarly, the Janas argue that the six year time requirement should be tolled due to this fraudulent concealment. These arguments are rejected by *Sorrells* and *Farnam.* In *Sorrells*, the Seventh Circuit, quoting *Farnam*, states:

> In *PaineWebber* [*Farnam*] ... we explicitly held that Section 15 which defines which claims "shall be *eligible* for submission for arbitration" (emphasis added), *is an eligibility requirement and not a statute of limitations and thus cannot be tolled.*

*Sorrells*, 957 F.2d at 513 (quoting *Farnam*, 870 F.2d at 1292) (emphasis in original). The Court adheres to the analysis in *Farnam* and *Sorrells.* As an eligibility requirement, and not a statute of limitations, Section 15's time requirement may not be tolled.

Accordingly, with respect to the eligibility issue, the Janas' Motion to Dismiss is DENIED.

### 2. Punitive Damages

■ The Customer Agreements signed by the Janas state that "This agreement and its enforcement shall be governed by the laws of the State of New York...." Under New York State law, as interpreted by its Court of Appeals, punitive damages may not be awarded in arbitration proceedings. *Garrity v. Lyle Stuart, Inc.*, 40 N.Y.2d 354, 386 N.Y.S.2d 831, 353 N.E.2d 793 (1976). Based on *Garrity*, Merrill Lynch seeks to prevent the arbitration of the Janas' demand for punitive damages. The Janas move to dismiss this request for relief on the grounds that the *Garrity* case is inapplicable here by virtue of the Consumer Agreements, Merrill Lynch's membership in NASD, and the FAA. In the opinion of the Court, each of these arguments must be rejected.

---

5. The Janas also contend that they are third-party beneficiaries of Merrill Lynch's contract with NASD and that this fact mandates the requested dismissal of the Complaint in this case. However, the eligibility issue here presented turns on the interpretation of Section 15, not how it is sought to be enforced.

6. The first of these two dates is essentially agreed upon by the parties because the Janas date that investment "1985." The second date is less certain because the Janas date that investment "1986." The Court assumes that the specificity of Merrill Lynch's date is accurate for the purpose of determining this motion since the Janas have not denied its accuracy.

■ The Janas first argument is that the parties never contracted to have New York State law govern the arbitration agreement. The Janas point to the arbitration agreement in *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 121 (2d Cir.1991). The agreement at issue there stated that "any controversy" between the parties "shall be settled by arbitration" under either the NASD or NYSE rules and "*shall be governed by the laws of the State of New York.*" *Wagoner,* 944 F.2d at 121 (emphasis added). The agreements here state that New York Law governs "This agreement and its enforcement . . ." The Court sees no material difference in these two agreements. The agreements in question here mandate arbitration of certain claims and are enforced by the arbitration panels and the courts, where necessary. New York law governs both the interpretation and enforcement of those agreements, whatever the forum.

■ Next, the Janas contend that since punitive damages are contemplated by the NASD Code, they may not be prohibited by New York law. The *Arbitrator's Manual,* May 1992, compiled by the Securities Industry Conference on Arbitration and distributed by the NASD to the members of its arbitration board states:

> The issue of punitive damages may arise with great frequency in arbitrations. Parties to arbitration are informed that arbitrators can consider punitive damages as a remedy.

*Arbitrator's Manual* at 26. The Janas contend that this provision and other broad provisions constitute part of their arbitration agreement with Merrill Lynch. Were the above quoted language established as a term of the parties' contract, this Court may be persuaded that the above language takes precedence over New York State law.[7] The

Janas have not demonstrated, however, that the quoted language is part of the NASD Code. Since the language is not part of the NASD Code, it is not part of the contract.

■ As is apparent, the punitive damages issue must turn on whether New York State or federal law governs. In their final argument, the Janas contend that federal law, the FAA, governs this case. Although not always explicitly discussed as such, this a pre-emption issue. The Court must determine if New York state law, and thus *Garrity,* is preempted by the FAA.

The principal Supreme Court case on this issue is *Volt Info. Sciences v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). In *Volt,* a contractor entered into a construction contact with a university to install electrical conduits on the university's campus. The contract contained an agreement to arbitrate and a choice of law provision similar to the one in this case. The two parties came a dispute. The university sued the contractor, and two parties with whom the university did not have an arbitration agreement, in California Superior Court. The university moved for a stay of the arbitration proceedings pursuant to state law. The contractor moved to compel arbitration; the motion was denied. The California Court of Appeal affirmed and the California Supreme Court denied the contractor's petition for review. The Supreme Court determined that it had jurisdiction and affirmed the decision.

The Supreme Court held that the state law provision staying arbitration was not preempted by the FAA. The FAA contained no express pre-emptive provision and did not "reflect a congressional intent to occupy the entire field of arbitration." *Volt,* 489 U.S. at

---

7. At minimum, this would be a difficult issue to resolve. As the Court's discussion of the law of pre-emption may indicate, a conclusion that the quoted language was part of the parties contract would require the Court to choose between conflicting terms within the customer agreement. One term, the incorporation of the NASD Rules, would permit punitive damages; another term, the incorporation of New York law, would prohibit them. *See Fahnestock & Co. v. Waltman,* 935 F.2d 512, 518 (2d Cir.1991) (stating that "*in*

*the absence of an agreement on the subject*" [i.e. a punitive damage award by arbitrators] state law is not pre-empted), *cert. denied,* — U.S. —, 112 S.Ct. 380, 116 L.Ed.2d 331 (1991), *and cert. denied,* — U.S. —, 112 S.Ct. 1241, 117 L.Ed.2d 474 (1992). Were there an agreement regarding a punitive damage, pre-emption might be necessary. This inquiry need not be made here, however, because the Janas have failed to establish that the quoted language is part of the NASD Code.

477, 109 S.Ct. at 1254. Given these conclusions, the remaining test was to determine whether the state law at issue conflicts with federal law such that it " 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Id.* (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). The purpose of the FAA was to ensure that agreements to arbitrate were enforced in the courts and to make sure that they were treated like other contracts. *Id.* 489 U.S. at 478, 109 S.Ct. at 1255. With that understanding of the purpose of the FAA, the Supreme Court concluded that:

> [I]t does not follow that the FAA prevents the enforcement of agreements to arbitrate under different rules than those set forth in the Act itself. Indeed, such a result would be quite inimical to the FAA's primary purpose of ensuring that private agreements to arbitrate are enforced according to their terms.

*Id.* at 479, 109 S.Ct. at 1255. This language, and the remainder of the *Volt* opinion, indicate great deference to the contractual rights of the parties, including their right to choose the applicable law for their transactions.

Here, Merrill Lynch seeks to enforce the terms of its arbitration agreement. In the opinion of the Court, this intention does not conflict with the goals of the FAA. The FAA does not pre-empt New York State law or the application of *Garrity* to this case. The parties agreed to arbitrate and to do so under the laws of New York. Permitting New York law to govern the case merely enforces the terms of the contract.

■ The Janas correctly point out that not all federal courts agree with this Court's interpretation of FAA pre-emption. In fact, there is disagreement on this issue among the Circuit courts. *Compare, e.g., Barbier v. Shearson Lehman Hutton, Inc.*, 948 F.2d 117, 121–22 (2d Cir.1991) (finding that *Garrity* is not pre-empted by the FAA); *Fahnestock & Co. v. Waltman*, 935 F.2d 512 (2d Cir.1991) (same), *cert. denied*, ── U.S. ──, 112 S.Ct. 380, 116 L.Ed.2d 331 (1991), *and cert. denied*, ── U.S. ──, 112 S.Ct. 1241, 117 L.Ed.2d 474 (1992); *with Raytheon Co. v. Automated Business Sys., Inc.*, 882 F.2d 6, 11 (1st Cir.1989) (noting criticism of *Garrity* and treating the issue as a matter of federal law although failing to discuss any pre-emption issue). In the opinion of the Court, the opinions of the Second Circuit in *Barbier* and *Fahnestock* are persuasive authority for concluding that *Garrity* is not pre-empted by the FAA. *See also Pierson v. Dean, Witter, Reynolds, Inc.*, 742 F.2d 334, 337–40 & n. 4 (7th Cir.1984) (reversing a district court decision rejecting *Garrity*); *Mastrobuono v. Shearson Lehman Hutton Inc.*, 812 F.Supp. 845, 846–48 (N.D.Ill.1993) (holding that FAA does not pre-empt the application of *Garrity* and vacating an award of punitive damages).[8]

Accordingly, with respect to the punitive damage issue, the Janas' Motion to Dismiss is DENIED.

### 3. Motion for Injunctive Relief

■ Although labeling its motion "Motion for Injunctive Relief", Merrill Lynch is essentially moving this Court to issue a an order to arbitrate pursuant to Section 4 of the FAA.[9] That section states:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court [having jurisdiction] . . . for an order

---

**8.** Merrill Lynch also attempts to argue that an arbitration award of punitive damages violates their right to due process. Without reaching this issue in full, the Court notes that this argument does not appear persuasive considering that the Supreme Court has expressly upheld as arbitrable treble damages under the Racketeer Influenced and Corrupt Organizations Act. *See Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987).

In this Circuit, the treble damages of the RICO statute are punitive. *See Price v. Marshall Erd-man & Assocs.*, 966 F.2d 320, 326 (7th Cir.1992); *Washburn v. Brown*, No. 81–C–1475, 1988 WL 130021, *3 (N.D.Ill. Nov. 23, 1988) (Kocoras); *Carroll v. Brown*, No. 80–C–6251, 1988 WL 130004, *3 (N.D.Ill. Nov. 25, 1988) (Kocoras); *Eliasen v. Hamilton*, No. 81–C–123, 1987 WL 7815, *11 (N.D.Ill. Mar. 9, 1987) (Grady).

**9.** For the purposes of appellate review, the two may be considered the same if nothing remains pending in the district court. *See Matterhorn, Inc. v. NCR Corp.*, 763 F.2d 866, 870 (7th Cir. 1985).

directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4 (1988).[10] Under this section, the Court may issue an order compelling the parties to arbitrate their case under the terms of their arbitration agreement. In the opinion of the Court, such an order is here appropriate. Motion GRANTED.

As indicated above, the Court concludes that two of the Janas' claims were not timely submitted to arbitration under NASD Code Section 15. Additionally, the Court concludes that the parties contracted to conduct their dispute under New York State law, thereby precluding a punitive damage award in arbitration. Accordingly, the Court orders the following:

(1) The parties shall proceed to arbitration consistent with this memorandum opinion and order; specifically,

(2) The investments made by the Janas on April 4, 1985 and on April 15, 1986 shall not be submitted to arbitration;

(3) The Janas shall not submit punitive damage claims to arbitration;

(4) This Court will retain jurisdiction over this matter for thirty days. Thereafter, this case will be dismissed and will constitute a final judgment for the purpose of appellate review.

10. New York law is similar. *See* CPLR 7502(b) & 7503(b).