**PRUDENTIAL SECURITIES INCORPORATED, et al., Plaintiffs,**

v.

**Go SUGIURA, et al., Defendants.**

**No. 93 C 6148.**

United States District Court, N.D. Illinois, E.D.

Jan. 18, 1994.

Timothy A. Nelsen, Miriam Bahcall, Rawn Howard Reinhard, Chicago, IL, for plaintiffs.

Jerrold E. Fink, Daniel N. Janich, Steven L. Katz, Chicago, IL, for defendants.

### MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Prudential Securities Incorporated, J. Frederic Storaska ("Storaska"), J. Frederic

---

Storaska Management, Inc. d/b/a Corporate Executive Services and George Ball (collectively "Prudential Securities," used here as a singular noun[1]) have brought a Complaint for Declaratory Judgment against Go Sugiura and Kaoru Sugiura (collectively "Sugiuras"), "seek[ing] an order declaring that they have no obligation to arbitrate claims previously released by the Sugiuras or claims ineligible for arbitration under the rules of the American Stock Exchange ("AMEX")" (Complaint ¶ 1). Sugiuras responded with a motion pursuant to Federal Arbitration Act ("Act") § 3, 9 U.S.C. § 3,[2] "to compel arbitration and to stay this litigation until an arbitration shall be had on all of the Sugiuras' claims against the Plaintiffs, in accordance with the terms of the Agreement entered into by the parties."

With the issues thus drawn, the parties have briefed their respective positions and the questions are ripe for decision. For the reasons stated in this memorandum opinion and order, this Court has determined that Sugiuras have the better of the dispute in one respect, while Prudential Securities prevails on the other controverted issue.

### Background [3]

After opening two brokerage accounts with Prudential Securities in about May 1987 (Complaint ¶ 9), Sugiuras engaged in extensive investments through those accounts (Complaint ¶ 10 adverts to more than $3.3 million before August 23, 1987[4]). Their Client's Agreements included this Paragraph 14:

Any controversy arising out of or relating to my account, to transactions with or for me or to this Agreement or the breach thereof, and whether executed or to be executed within or outside of the United States, except for any controversy arising out of or relating to transactions in commodities or contracts related thereto executed on or subject to the rules of a contract market designated as such under the Commodity Exchange Act, as amended, shall be settled by arbitration in accordance with the rules then obtaining of either the American Arbitration Association or the Board of Governors of the New York Stock Exchange[5] as I may elect.

Sugiuras' relationship with Prudential Securities extended over several years. As a result of dissatisfaction that arose when (as Sugiuras contend) Go Sugiura learned that Storaska—the original representative of Prudential Securities with whom Sugiuras dealt—had not carried out the investment representations he had made to them, Sugiuras transferred their accounts to another Prudential Securities broker.

After a period during which Sugiuras had no further contact with Storaska (who had in the meantime left Prudential Securities), Sugiuras assert that in December 1992 Storaska called Go Sugiura to see whether Sugiuras were interested in settling on one of the investment deals that had turned sour—a specific limited partnership. According to Sugiuras, they signed what they believed were releases limited in that fashion, but what instead turned out to be general releas-

---

1. Although the only named party to the Client's Agreements containing an agreement to arbitrate disputes was the predecessor corporation to Prudential Securities Incorporated, there appears to be no quarrel as to the other plaintiffs (as the corporation's brokers or affiliates) being equally bound by the commitment to arbitration. Hence the use of the collective term is not only convenient but accurate.

2. Further citations to the Act will take the form "Act § —." This may be the only instance in which the numbering in a title of the United States Code corresponds exactly to the internal numbering of a single statute.

3. Although this Court has carefully reviewed all of the parties' submissions (for example, Complaint Ex. C reproduces Sugiuras' entire bulky "Claimants' Original Statement of Claim" as

submitted in the AMEX arbitration), all of that detail is really unnecessary to enable this Court to pose and to resolve the questions now before it. Accordingly what is set out here is skeletal rather than comprehensive—just enough to frame the issues.

4. Prudential Securities picked that date because Sugiuras filed their AMEX arbitration claim on August 23, 1993. Whether the pre-August 23, 1987 transactions are subject to arbitration is a key question to be discussed a bit later.

5. [Footnote by this Court] Neither side explains just how AMEX got into the act rather than NYSE, but again no one is raising a question in that respect.

es, based on Storaska's fraudulent misrepresentation that the releases covered only the single disputed item. Those January 28, 1993 releases (the "Releases," Complaint Ex. B) are the basis on which Prudential Securities urges that this Court should decide that no obligation to arbitrate exists at all.

To understand the other issue posed by Prudential Securities in the current litigation, it is necessary to set out one of the provisions of AMEX's arbitration rules. Although Complaint ¶ 20 quotes only the first sentence of AMEX Rule ("Rule") 605(a), that selective quotation misleadingly omits the critical second sentence. Here is Rule 605(a) in its entirety:

> No dispute, claim, or controversy shall be eligible for submission to arbitration where six (6) years shall have elapsed from the occurrence or event giving rise to the act or dispute, claim or controversy. This Section shall not extend applicable statutes of limitations, nor shall it apply to any case which is directed to arbitration by a court of competent jurisdiction.

### Arbitrability of Sugiuras' Claims

█ Prudential Securities invokes the general rule that the legal question of arbitrability is for the court and not the arbitrators to resolve—a kind of anti-bootstrapping principle. Because Prudential Securities contends that the Releases also extinguished Sugiuras' right to invoke the arbitration agreement that the parties had entered into, it would like this Court to cut off the AMEX arbitration at the pass.

But that approach is at odds with more than three decades of judicial deference to the arbitral process whenever the parties have voluntarily selected that form of dispute resolution, as well as the most recent decision from our Court of Appeals in *Sweet Dreams Unlimited, Inc. v. Dial–A–Mattress Int'l, Ltd.*, 1 F.3d 639 (7th Cir.1993).[6] As *Sweet Dreams, id.* at 641 began its substantive discussion:

> It is beyond peradventure that the Federal Arbitration Act embodies a strong federal

policy in favor of arbitration. *See, e.g., Moses H. Cone Mem. Hosp. v. Mercury Constr.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). But the duty to arbitrate remains one assumed by contract, and we will not compel parties to arbitrate disputes unless they have agreed to do so.

And as *Sweet Dreams, id.* went on to repeat, one of the cases that made up the famous *Steelworkers Trilogy, United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960) emphasized the presumption of arbitrability in reading the disputants' contractual arbitration clause:

> An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

Here the arbitration commitment that formed part of the Client's Agreements (Prudential Securities' own printed form, but another item selectively omitted from its Complaint) was unambiguous and more sweeping than the one dealt with in *Sweet Dreams*—as already stated, it embraced "[a]ny controversy arising out of or relating to my account, to transactions with or for me or to this Agreement or the breach thereof."

There is no question that all of Sugiuras's claims come within that broad sweep—they all represent controversies arising out of Sugiuras' accounts and out of the transactions entered into for Sugiuras through those accounts—and that is really the end of it. *Sweet Dreams* revisited the somewhat different metaphysical question whether a claim of fraud in the inducement—something that in pure contract terms could prevent the formation of the contract and could thus prevent the existence of an agreement to arbitrate to begin with—should be resolved by the court before arbitration could take place. As to any arbitration agreement that is as all-encompassing as Prudential Securities', that

---

6. As it happens, *Sweet Dreams* coincidentally disagreed with this Court's adoption of an approach that was considerably more tenable than the one

now vigorously advanced by Prudential Securities (803 F.Supp. 1358 (N.D.Ill.1992)).

question had previously been answered in the affirmative in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1805–06, 18 L.Ed.2d 1270 (1967), over a vigorous (and candidly more intellectually satisfying) dissent written by Justice Black for himself and two other Justices.

In this instance no question even arguably exists as to the validity of the arbitration agreement or as to whether its scope is broad enough to encompass Sugiuras' claims (except for the pre-August 23, 1987 claims, of which more later). It is true that the Releases may be a *defense* to those claims, but that is as much grist for the arbitrators' mill as are the things that Sugiuras must advance in support of their claims.

To escape that conclusion, Prudential Securities attempts to point to what is really a non-analogous decision in *Matterhorn, Inc. v. NCR Corp.*, 763 F.2d 866 (7th Cir.1985). There the parties had a pre-existing contract that included an agreement to arbitrate, but they then entered into a new transaction that did not by its terms stem from the original contract at all—and the need to resolve that question was held to bring the case within the boundaries for judicial rather than arbitral decision. It takes only a statement of what was at issue in *Matterhorn* to demonstrate its nonparallel to what is at issue here.

That also renders equally inapropos the other cases on which Prudential Securities seeks to rely, *Great Am. Trading Corp. v. I.C.P. Cocoa, Inc.*, 629 F.2d 1282, 1288 (7th Cir.1980) and *Halcon Int'l, Inc. v. Monsanto Australia, Ltd.*, 446 F.2d 156, 159 (7th Cir. 1971). Prudential Securities' effort to convert the Releases into an amendment of the arbitration agreement[7] and hence a judicial rather than arbitral question is clever but unsound. Indeed, Prudential Securities' characterization of the Releases as wiping out everything that had previously existed between the parties would logically extend (and by its terms does expressly extend) to the entirety of the Customer's Agreements themselves.[8] And that being the case, the issue becomes controlled by *Wilson Wear, Inc. v. United Merchants and Mfrs., Inc.*, 713 F.2d 324 (7th Cir.1983), which was cited by *Matterhorn*, 763 F.2d at 872 as a more recent authority than *Great American* and as holding "that the issue of rescission of a contract is for the arbitrator, provided the issue is within the scope of the arbitration clause."

It is however unnecessary to ring all of the changes on the issues that have been dealt with here. Suffice it to say that Sugiuras' invocation of the doctrines recently reconfirmed in *Sweet Dreams* is persuasive, while Prudential Securities' efforts to turn away from those doctrines is not. In response to Prudential Securities' Complaint for Declaratory Judgment, this Court declares that all of the plaintiffs collectively referred to here as Prudential Securities *do* have the obligation to arbitrate the claims presented by Sugiuras to AMEX for that purpose (subject to the exception—which may be a major one—discussed next).

---

**7.** Prudential Securities Mem. 8 seeks to draw from our Court of Appeals' decisions the proposition "that this Court is the proper forum for resolving whether the parties' agreement to discharge Prudential Securities from all 'covenants, contracts, controversies, agreements, promises' amended their prior agreement to arbitrate." In support of that proposition Prudential Securities has also cited to *Chauffeurs & Helpers Local Union No. 50 v. McCartin–McAuliffe Mechanical Contractor, Inc.*, 708 F.2d 313 (7th Cir.1983) in a wholly misleading manner—its Mem. 9 described that case as "finding release terminated right to arbitrate grievance," when in fact the case decided only that a settlement agreement that was entered into *after* the issuance of an arbitration award effectively wiped out that earlier arbitration award, which had been rendered no longer viable in light of that settlement.

**8.** In typical fashion, the Releases encompass everything including the kitchen sink, covering among other things all "contracts" as well as myriad other matters of every conceivable description that Sugiuras may have had against Prudential "from the beginning of the world to the day of the date of this RELEASE." And indeed Prudential Securities' counsel took exactly that position during the December 21, 1993 initial hearing on Sugiuras' motion to compel arbitration, in seeking to distinguish *Sweet Dreams* (Tr. 3):

MS. BAHCALL: As far as the release, we believe there was a second agreement which was the release, which specifically says that it cancels all prior agreements. We believe it's that second agreement that's at issue, unlike in *Sweet Dreams* and other cases.

## Scope of the Arbitration

■ As has just been indicated, that last statement is rendered potentially overbroad by the need also to decide the effect of Rule 605(a). That is, now that Prudential Securities' basic obligation to arbitrate has been ruled on affirmatively, are claims that antedate the six-year period referred to in the first sentence of that Rule excluded from such arbitration?

In that respect, the most recent F.Supp. advance sheet coincidentally reports an opinion by this Court's colleague Honorable John Nordberg that deals expressly with the interpretation and application of an identical provision. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jana,* 835 F.Supp. 406 (N.D.Ill.1993) involved the NASD Code rather than the AMEX Rules, but the two provisions are precisely the same in terms of their barring over-six-year-old claims.

There is no need to repeat Judge Nordberg's extended analysis here. It draws on our Court of Appeals' precedents in *Paine-Webber, Inc. v. Farnam,* 870 F.2d 1286, 1292 (7th Cir.1989) and *Edward D. Jones & Co. v. Sorrells,* 957 F.2d 509, 512 (7th Cir.1992). Both of those cases hold (1) that an arbitration panel has *no jurisdiction* over claims not submitted to arbitration within six years of the event or occurrence leading to the dispute and (2) that because the arbitration rules (in this instance Rule 605(a)) define what claims "shall be eligible for submission to arbitration," the issue is truly jurisdictional and *not* a statute of limitations that can be waived or tolled.

But that does not necessarily end the discussion. After all, arbitration agreements define the scope of the parties' commitment to that means of dispute resolution as a matter of contract law. And here the same contract that contains the over-six-year-old claim bar expressly says of the section that creates that bar:

> Nor shall it apply to any case which is directed to arbitration by a court of competent jurisdiction.

Thus the parties themselves have chosen to include in their contracts a provision that a court may *confer* jurisdiction that would not otherwise exist. And that possibility has been confirmed by our Court of Appeals in *Edward D. Jones,* 957 F.2d at 513–14. Hence although Prudential Securities would have preferred to bring the matter to a close once the six-year bar was announced, this Court must deal with the potential judicial lowering of that bar that forms just as much a part of the parties' arbitration undertakings.

Unfortunately for Sugiuras, that second sentence cannot fairly be read (as they would like) as issuing some type of blank check to a court that has jurisdiction over the parties (as this Court does). On the contrary, *Edward D. Jones, id.* at 513 has construed the wholly parallel NASD provision, which was the result of an amendment modifying what had previously been an *absolute* time bar, in these terms: [9]

> Read together with the addition to Section 15 stating that Section 15 shall not apply "to any case which is directed to arbitration by a court of competent jurisdiction," the effect of the 1984 amendment is clearly to allow a claim *properly before a court* to be directed to arbitration even if the six year limitation has run *if the court so directs.* Only then, is the Section 15 six year bar lifted.

And that reading was supported by a quotation (with emphasis supplied) from the NASD's proposal to the SEC in support of the amendment (*id.*):

> The proposed amendment to the Code's time limitation provision would permit *a court which has jurisdiction over a claim to direct that the claim be resolved by arbitration.* Currently, if the claim is six years old or more, the [NASD] and other self-regulatory organizations could not accept the matter for arbitration. The proposed rule should make the Code's time limitation co-extensive with various state statutes of limitations and permit all securities-related disputes *which are eligible*

9. Here, as in the further quotations from that case, the emphasis appears in the Court of Appeals' decision—it has not been added by this Court.

*for a judicial disposition* to be resolved by arbitration.

In *Edward D. Jones* the customers, like Sugiuras here, had brought their claims directly to the arbitrators rather than to court. And what our Court of Appeals said about that (*id.* at 513–14) dooms Sugiuras' effort to tender stale claims to those arbitrators:

> This interpretation is consistent with a common sense reading of the amended Section 15. Section 15's first sentence states that certain claims (those older than six years) are not eligible for arbitration. Its second sentence limits the first sentence's effect by exempting from its reach "any case which is directed to arbitration by a court of competent jurisdiction." Thus, Section 15's bar on all claims older than six years is removed only if a court with jurisdiction over the claim orders the matter be submitted to arbitration. The Sorrells did not present their claims to a court, however. They voluntarily chose to submit them to NASD arbitration. Thus, this exception to Section 15's jurisdictional bar is inapplicable to their claims.

In sum, this Court responds to the second aspect of Prudential Securities' Complaint for Declaratory Judgment by declaring that the arbitration to be carried on by AMEX cannot extend to any claim by Sugiuras where at least "six years shall have elapsed from the *occurrence or event giving rise to the act or dispute, claim or controversy*" as of August 23, 1993. And this Court sees no reason that the presentation of the facts of the various claims to the arbitrators should not be sufficient to allow the arbitrators themselves to distinguish the barred claims from still-viable claims.

### Conclusion

This Court has declared that (1) all plaintiffs (collectively referred to here for convenience as "Prudential Securities") *do* have an obligation to arbitrate the claims submitted to AMEX by Sugiuras for that purpose, but (2) that obligation does not extend to any such claims as to which, as of August 23, 1993, at least six years had elapsed from the occurrence or event giving rise to the act or dispute, claim or controversy. Because Pru-

dential Securities has submitted itself to the jurisdiction of this Court for declaratory relief at a time that the arbitration was already pending, no reason appears to require the entry of an order to compel arbitration under Act § 4 (for that purpose the already-announced declaration should be enough). Accordingly Sugiuras' motion to compel arbitration is denied. Nor does this Court perceive any need to stay this litigation pending arbitration under Act § 3, and Sugiuras' motion *to that effect is also denied*. This action is at an end with the issuance of the declarations contained in the first sentence of this paragraph—those declarations represent the final order in this case.