USCA1 Opinion

 

 United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 95-2188 PAINEWEBBER INCORPORATED, Plaintiff, Appellant, v. MOHAMAD S. ELAHI, KOKAB MOAREFI ELAHI AND MARYAM ELAHI, Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Douglas P. Woodlock, U.S. District Judge] ___________________ ____________________ Before Boudin, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Steven L. Manchel with whom David A. Forman and Choate, Hall & _________________ ________________ _______________ Stewart were on brief for appellant. _______ Philip M. Giordano with whom Giordano & Champa, P.A. was on brief ___________________ _______________________ for appellees. ____________________ July 3, 1996 ____________________ STAHL, Circuit Judge. Mohamad S. Elahi, his wife STAHL, Circuit Judge. ______________ Kokab Moarefi Elahi, and their daughter Maryam Elahi, former clients of the investment firm PaineWebber Incorporated ("PaineWebber"), sought arbitration of several claims stemming from ill-fated investments. PaineWebber filed a complaint in federal district court seeking to stay arbitration, alleging that the claims were time-barred under the terms of the arbitration agreement. The district court dismissed PaineWebber's complaint and granted the Elahis' motion to compel arbitration. PaineWebber appeals, and we affirm. I. I. __ Background Background __________ The Elahis opened investment brokerage accounts with PaineWebber in 1986 and executed a "Client's Agreement" providing that: all controversies which may arise between [the Elahis and PaineWebber] concerning any transaction in any account(s) or the construction, performance or breach of this or any other agreement between [the Elahis and PaineWebber] . . . shall be determined by arbitration. Any arbitration shall be in accordance with the rules in effect of either the New York Stock Exchange, Inc., American Stock Exchange, Inc., National Association of Securities Dealers, Inc., or where appropriate, the Chicago Board Options Exchange or National Futures Association, as the [client] may elect. -2- 2 It also provided that "[t]his agreement and its enforcement shall be construed and governed by the laws of the State of New York." Some time in 1994, the Elahis notified PaineWebber of their intention to pursue claims that one of its brokers had sold them unsuitable and highly speculative investments, falsely guaranteed a twelve-percent minimum return, and deceptively assured them that their investments were secure when in fact they had already lost a significant part of their initial investment. On August 3, 1994, the Elahis and PaineWebber executed an agreement to toll, as of June 28, 1994, the running of all statutes of limitations and other defenses based on the passage of time, apparently hoping to reach a negotiated settlement. The effective date of the tolling agreement was more than seven years after the Elahis' last purchase of an investment from PaineWebber.  On December 29, 1994, the Elahis filed a Statement of Claim with the National Association of Securities Dealers, Inc. ("NASD"), seeking arbitration of claims arising under the federal securities laws, Massachusetts statutes, and various Massachusetts common law theories of fraud and breach of fiduciary duty. PaineWebber responded by bringing this action for declaratory and injunctive relief, seeking to bar the arbitration of the Elahis' claims. PaineWebber asserted that the arbitration rules of the NASD precluded claims filed -3- 3 more than six years after the purchase of the investments at issue. Specifically, PaineWebber pointed to Section 15 of the NASD Code of Arbitration Procedure ("section 15"), which provides: Time Limitation Upon Submission _______________________________ Sec. 15. No dispute, claim, or controversy shall be eligible for submission to arbitration under this Code where six (6) years have elapsed from the occurrence or event giving rise to the act or dispute, claim, or controversy. This section shall not extend applicable statutes of limitations, nor shall it apply to any case which is directed to arbitration by a court of competent jurisdiction. PaineWebber postulated that the Elahis' claims were not "eligible for submission to arbitration" because they concerned securities purchased more than seven years before the effective date of the tolling agreement and over eight years before the claim for arbitration was filed with the NASD. The Elahis' countered by filing motions (1) to dismiss PaineWebber's complaint and (2) to compel arbitration under the Federal Arbitration Act, 9 U.S.C. 4. The district court granted the Elahis' motions. The court found that the parties had signed a valid arbitration agreement covering disputes over investment transactions, and consequently ruled that the applicability of the time-bar provision of section 15 was a question to be -4- 4 determined by the arbitrator rather than the court.1 PaineWebber appeals. II. II. ___ Discussion Discussion __________ PaineWebber argues on appeal that the section 15 time bar makes the Elahis' claims ineligible for arbitration, and that the court, not the arbitrator must therefore decide the timeliness question. The issue before us, then, is whether the time-bar provision is to be construed and applied by the arbitrator or by the court.2 We are the tenth circuit court to address that question; our sister circuits are split five-to-four. The Third, Sixth, Seventh, Tenth, and Eleventh Circuits have held that the court must decide the applicability of the section 15 time bar; the Second, Fifth, and Eighth, and Ninth Circuits have held that the  ____________________ 1. The district court based its decision on its published opinion in a similar case, PaineWebber, Inc. v. Landay, 903 _________________ ______ F. Supp. 193 (D. Mass. 1995), which the court incorporated by reference in its unpublished memorandum and order in this case. 2. Ultimately, the arbitrator or the court will probably need to determine (1) whether the only relevant "occurrence or event" triggering the time bar was the Elahis' purchase of investments, or whether the time bar should be measured from the date of alleged subsequent acts or omissions related to the investments, and (2) whether the time bar is absolute or subject to equitable tolling. We need not decide those issues. We are faced solely with the question whether the district court correctly referred the time bar issues to the arbitrator, or should have decided them itself. -5- 5 arbitrator decides.3 In our view, this body of appellate caselaw leaves important aspects of the problem unaddressed, as we shall explain. The relevant Supreme Court cases provide guidance, but do not point clearly to the correct result in this case. Consequently, we embark on our own analysis. Because this appeal presents a question of law, appellate review is plenary. See McCarthy v. Azure, 22 F.3d ___ ________ _____ 351, 354 (1st Cir. 1994) (applying de novo review to district _______ court's ruling on scope of arbitration agreement); Commercial __________ Union Ins. Co. v. Gilbane Bldg. Co., 992 F.2d 386, 388 (1st ______________ _________________ Cir. 1993) (explaining that determination of arbitrability depends on contract interpretation, which is a question of law). PaineWebber presents two basic arguments: (1) that the parties' contractual choice of New York law was made with the intent to require the court, not the arbitrator, to apply the section 15 time bar, as New York caselaw requires; and (2) that, under federal law, the time bar presents a question of arbitrability to be decided by the court, in the absence of clear evidence that the parties intended to submit arbitrability determinations to arbitration. We address these arguments in order.  ____________________ 3. The cases are listed and discussed infra in part _____ II.B.1.a. -6- 6 A. Effect of the Choice-of-Law Clause ______________________________________ The agreement between PaineWebber and the Elahis provides that "[t]his agreement and its enforcement shall be construed and governed by the laws of the State of New York." Relying on that choice-of-law provision, PaineWebber argues that we must reverse the district court's order because New York courts have held that courts, not arbitrators, must decide the applicability of the section 15 time bar. See, ___ e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ohnuma, ____ ____________________________________________ ______ 630 N.Y.S.2d 724, 725 (N.Y. App. Div. 1995); Merrill Lynch, ______________ Pierce, Fenner & Smith, Inc. v. DeChaine, 600 N.Y.S.2d 459, _____________________________ ________ 460 (N.Y. App. Div.), leave to appeal denied, 624 N.E. 2d 694 ______________________ (1993).  Thus, our first task is to determine if the choice- of-law provision settles the question whether the court or the arbitrator decides the effect of the section 15 time bar. Somewhat paradoxically, federal arbitration law dictates the effect of the clause selecting New York law. Section 2 of the Federal Arbitration Act ("FAA"),4  ____________________ 4. Section 2 of the FAA provides in pertinent part that: A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. -7- 7 "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." Moses _____ H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, _______________________ _____________________ 24 (1983). Although "[t]he FAA contains no express pre- emptive provision," and "[does not] reflect a congressional intent to occupy the entire field of arbitration," Volt Info. __________ Sciences, Inc. v. Board of Trustees of Leland Stanford, Jr. ______________ ___________________________________________ Univ., 489 U.S. 468, 477 (1989), it was intended to "create a _____ body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Moses H. Cone, 460 U.S. at 24. There is no dispute that the _____________ agreement between these parties is within the scope of the FAA, because it is clearly one "involving commerce" as that phrase was broadly construed in Allied-Bruce Terminix Cos. v. __________________________ Dobson, 115 S. Ct. 834, 839-43 (1995). And, the question ______ whether a court or an arbitrator applies the section 15 time bar relates closely to "arbitrability," so we must apply the federal common law of arbitrability that has developed pursuant to the FAA. See Moses H. Cone, 460 U.S. at 24. ___ _____________ The "primary purpose" of the FAA is to ensure "that private agreements to arbitrate are enforced according to their terms." Volt, 489 U.S. at 479. "Arbitration under the ____ Act is a matter of consent, not coercion, and parties are  ____________________ 9 U.S.C. 2. -8- 8 generally free to structure their agreements as they see fit." Id. Thus, whether an issue is to be decided by the ___ arbitrator is a matter of the parties' contractual intent. See Mastrobuono v. Shearson Lehman Hutton, Inc., 115 S. Ct. ___ ___________ ____________________________ 1212, 1216 (1995). The Supreme Court has explained that the FAA "not only 'declared a national policy favoring arbitration,' but actually 'withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.'" Id. ___ at 1215-16 (quoting Southland Corp. v. Keating, 465 U.S. 1, _______________ _______ 10 (1984)). More recently, the Supreme Court explained that if a state law is applicable to contracts generally, it may be applied to arbitration agreements, but a state law that is specifically and solely applicable to arbitration agreements is displaced by the FAA. Doctor's Assocs., Inc. v. ________________________ Casarotto, 116 S. Ct. 1652, 1655-56 (1996). Therefore, New _________ York law cannot require the parties in this case to submit _______ the question of the section 15 time bar to a court; the question is whether the parties intended, through their ________ general choice of New York law, to adopt for themselves the New York caselaw requiring that courts, not arbitrators, decide the time bar. Based on the "national policy favoring arbitration," Mastrobuono, 115 S. Ct. at 1216, the Supreme ___________ -9- 9 Court in Mastrobuono held that the choice-of-law provision in ___________ a broker-client agreement did not indicate an intent to adopt New York caselaw barring arbitrators from awarding punitive damages. 115 S. Ct. at 1215-18. The Court found that the parties' choice of New York law was not "an unequivocal exclusion of punitive damages," id. at 1217, and [a]t most . ___ . . introduce[d] an ambiguity into an arbitration agreement that would otherwise allow punitive damages awards." Id. at ___ 1218. The Court resolved that ambiguity both "in favor of arbitration," id., and "against the interest of the party ___ that drafted it," id. at 1219, and found that the choice-of- ___ law clause did not speak to the power of the arbitrator to award punitive damages, id. ___ Following the principles and analysis set forth in Mastrobuono, we (like the district court) find that the ___________ choice-of-law clause in this case is not an expression of intent to adopt New York caselaw requiring the courts to apply section 15. Here, the breadth of the arbitration clause -- encompassing "all controversies . . . concerning any transaction" as well as the "construction, performance, or breach" of the agreement -- militates against reading the choice-of-law clause as a limit on the arbitrator's power. Moreover, the agreement provides that "arbitration shall be in accordance with the rules in effect of the . . . [NASD]," which further undermines the likelihood that the parties -10- 10 intended to adopt arbitration rules contained in New York caselaw. In sum, we can do no better than to borrow from Mastrobuono: ___________ We think the best way to harmonize the choice-of-law provision with the arbitration provision is to read "the laws of the State of New York" to encompass substantive principles that New York courts would apply, but not to include special rules limiting the authority of arbitrators. Thus, the choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration . . . . Id. at 1219. ___ Thus, relying on Mastrobuono, we hold that the ___________ parties' contractual choice of New York law does not require a judicial determination of the effect of the NASD Code section 15 time bar.5 We move on to consider the arbitration clause itself (and the NASD Code of Arbitration Procedure incorporated therein) to determine, in light of federal arbitration law, whether the parties intended that the arbitrator or the court apply the time bar. B. Interpreting Section 15 ___________________________  ____________________ 5. This conclusion is not inconsistent with Volt Info. ___________ Sciences, Inc. v. Board of Trustees of Leland Stanford, Jr. ______________ __________________________________________ Univ., 489 U.S. 468 (1995). In Volt, the Supreme Court _____ ____ deferred to the California court's finding under state contract law that the parties had intended their choice-of- law clause to adopt California rules governing arbitration procedures. Id. at 476. Here, we must determine de novo ___ __ ____ what the parties intended by their choice-of-law clause, and we follow Mastrobuono. See Mastrobuono, 115 S. Ct. at 1217 ___________ ___ ___________ n.4. -11- 11 A cardinal principle of federal arbitration law is that "`arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" AT&T Technologies, Inc. v. ________________________ Communications Workers of Am., 475 U.S. 643, 648 (1986) _______________________________ (quoting United Steelworkers v. Warrior & Gulf Navig. Co., ____________________ __________________________ 363 U.S. 574, 582 (1960)).6 Where the parties have made clear what issues are to be arbitrated, and what issues are excluded from arbitration, it is easy to give effect to that principle. The difficulty comes where the existence or scope of the agreement to arbitrate is unclear; in that situation,  ____________________ 6. Earlier, one might have doubted whether appellate decisions concerning labor arbitration would apply to commercial arbitration. Today, there is little question. The Supreme Court relied heavily upon a labor arbitration case in its recent decision in First Options of Chicago, Inc. ______________________________ v. Kaplan, 115 S. Ct. 1920, 1923-25 (1995) (applying labor ______ arbitration precedents, particularly AT&T, to determine ____ whether courts or arbitrators decide arbitrability under a commercial arbitration agreement). We believe it is appropriate to follow the Supreme Court's lead in applying the particular labor arbitration cases cited herein to the particular issue in this commercial arbitration case. See, ___ e.g., McCarthy v. Azure, 22 F.3d 351, 354 (1st Cir. 1994) ____ ________ _____ (applying labor arbitration precedents in commercial arbitration case). Cf. Finegold, Alexander & Assocs., Inc. ___ ____________________________________ v. Setty & Assocs., Ltd., 81 F.3d 206, 207-08 (D.C. Cir. ______________________ 1996) (discussing application of labor arbitration precedents in commercial arbitration cases, and stating "there may no longer be much of a distinction between the two lines of cases . . . but precision constrains us to avoid treating them interchangeably"); Raytheon Co. v. Automated Bus. Sys., ____________ ____________________ Inc., 882 F.2d 6, 10-11 (1st Cir. 1989) (explaining that use ____ of labor arbitration precedents is inappropriate in deciding whether commercial arbitrators have power to award punitive damages, given different considerations in long-term labor- management relationships and short-term, often "one-shot" commercial relationships). -12- 12 federal arbitration law must provide default rules and presumptions. Because a party will not be coerced to arbitrate an issue unless he has so agreed, the Supreme Court has held that: the question of arbitrability -- whether a[n] . . . agreement creates a duty for the parties to arbitrate the particular grievance -- is undeniably a judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.  Id. at 649, followed in First Options of Chicago, Inc. v. ___ ___________ _______________________________ Kaplan, 115 S. Ct. 1920, 1923-25 (1995). In this case, if ______ the section 15 time bar is determinative of the "arbitrability" of the Elahis' claim, then, under AT&T and ____ First Options, the district court must construe and apply the _____________ time bar, unless we find "clear and unmistakable" evidence that the parties agreed to have the arbitrator decide arbitrability.  But the presumption established in AT&T and First ____ _____ Options -- that courts, not arbitrators, decide _______ "arbitrability" unless the parties clearly intend otherwise - - is an exception to the "liberal federal policy favoring arbitration." See Moses H. Cone, 460 U.S. at 24. Pursuant ___ _____________ to that policy, the Supreme Court has established a broad presumption of arbitrability: "any doubts concerning the -13- 13 scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Id. at 24-25. ___ Accordingly, if the time bar does not control "arbitrability," the issue of the time bar's applicability would be one for the arbitrator under the broad arbitration clause, absent a clear indication to the contrary in the parties' agreement. See Mastrobuono, 115 S. Ct. at 1218 ___ ___________ ("[A]mbiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration.") (quoting Volt, 489 U.S. at 476); AT&T, 475 U.S. at 650 (explaining ____ ____ established rule that where broad arbitration clause is in force, presumption of arbitrability exists unless "forceful evidence" indicates intent to exclude claim from arbitration). In other words, if an "arbitrability" issue arises, it is presumptively for the court to decide; but issues other than "arbitrability" are presumptively arbitrable, that is, for the arbitrator to decide. Because the agreement is not unmistakably clear about whether the court or the arbitrator is to apply the time bar, this case hinges on which of the two presumptions we apply: (1) issues of "arbitrability" are presumptively for the court to decide, or (2) issues other than "arbitrability" are presumptively for the arbitrator. And, -14- 14 which presumption we apply hinges on whether the time bar is an "arbitrability" issue, in the sense that the Supreme Court used that term in AT&T and First Options. Thus, we venture ____ _____________ into a definitional maze to determine whether or not the NASD time bar presents an issue of "arbitrability." 1. Does the time bar present an "arbitrability" ___________________________________________________ issue? ______ The Supreme Court's most recent discourse on "who decides arbitrability" appears in First Options, 115 S. Ct. _____________ at 1923-25. In First Options, the "arbitrability" issue was _____________ whether Kaplan and his wife were bound to arbitrate their personal liability for the debts of their wholly owned investment corporation, given that they had not personally signed the arbitration agreement that undisputedly bound the corporation. Thus, we can glean from First Options that the _____________ issue of whether a person is a party to an arbitration agreement is an "arbitrability" issue, and presumptively for the court to decide. In AT&T, the other Supreme Court case on "who ____ decides arbitrability," the "arbitrability" issue was whether the subject matter of the underlying dispute was expressly _______________ made non-arbitrable by the terms of the arbitration agreement. The arbitration clause of the collective bargaining agreement ("CBA") in AT&T expressly did not cover ____ disputes "excluded from arbitration by other provisions of -15- 15 this contract." AT&T, 475 U.S. at 645. The CBA provided ____ further that the employer, AT&T, was free to exercise certain management functions, including the termination of employment, "not subject to the provisions of the arbitration clause." Id. Another CBA term provided that layoffs would ___ occur in reverse order of seniority, defining layoffs as terminations resulting from "lack of work"; the "layoff" provision did not specify whether it was subject to, or excepted from, the arbitration clause. Id. The issue was ___ whether the union could compel arbitration over certain layoffs, or, instead, whether the layoffs were non-arbitrable management functions. The Supreme Court held that the issue whether "layoffs" were an arbitrable subject matter was to be decided by the courts, not the arbitrator, given that the parties had expressly agreed that certain subjects, including "termination of employment," were not arbitrable. Id. at ___ 651. Thus, we glean from AT&T that the question whether the ____ subject matter of the underlying dispute is within the scope of an expressly limited arbitration agreement is an "arbitrability" issue. In the case at hand, it is without question that PaineWebber and the Elahis are parties to an arbitration agreement of broad scope, and that the underlying dispute over unsuitable investments concerns a subject matter that they intended to arbitrate. Nonetheless, PaineWebber -16- 16 contends that the NASD section 15 time bar prevents the arbitrator from hearing any aspect of this dispute, because the time bar is a "substantive eligibility requirement."  The question before us, then, is whether the timeliness of submission goes to the "arbitrability" of the merits of the underlying dispute, within the meaning of that term as suggested by AT&T and First Options. ____ _____________ The Supreme Court has twice defined "arbitrability": in AT&T as "whether the . . . agreement ____ creates a duty for the parties to arbitrate the particular grievance," id. at 649; and in First Options as "whether they ___ _____________ agreed to arbitrate the merits" of the dispute, 115 S. Ct. at 1923. It is not immediately obvious how to apply these definitions to determine whether the NASD time bar is an arbitrability issue. One could say here that "arbitrability" is not an issue, because the parties clearly agreed to arbitrate the merits of disputes about investment transactions. Alternatively, one could say that the parties only agreed to arbitrate investment disputes less than six years old,7 in  ____________________ 7. The parties apparently agree that the NASD Code of Arbitration Procedure was incorporated by reference into their agreement, even though it was not known at the time of execution that the NASD would be the chosen arbitral forum. Cf. PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1201 (2d Cir. ___ _______________ _____ 1996) (holding that NASD Code not incorporated into identical client-broker arbitration agreement because NASD not identifiable as actual arbitral forum at time of execution of the agreement). -17- 17 which case the time bar would be an "arbitrability" issue. But where does that logic take us? Many a mandatory procedural rule could be called an "arbitrability" rule if the failure to comply prevented arbitration of the merits. For example, one might say that, by incorporating the NASD rules, the parties agreed to arbitrate only those disputes for which the arbitrator's fee has been paid; questions relating to the fee could be called "arbitrability" issues. It would be illogical, though, to conclude that the court, not the arbitrator, must determine if the proper fee was paid. Thus, it is not immediately clear how we should determine, at the margins at least, what is and what is not an arbitrability issue. Seeking more light on what "arbitrability" means and whether the section 15 time bar is an "arbitrability" issue, we next examine the rulings of other circuits on the question whether courts or arbitrators apply the section 15 time bar.  a. Decisions of other circuits ______________________________ i. Five circuits conclude the court must ________________________________________ decide ______ Five circuits (the Third, Sixth, Seventh, Tenth, and Eleventh) have interpreted the time bar of section 15 to be a substantive eligibility requirement that constitutes a jurisdictional prerequisite to arbitration, and thus for the -18- 18 court to apply.8 See, e.g., Cogswell v. Merrill Lynch, ___ ____ ________ ______________ Pierce, Fenner & Smith, Inc., 78 F.3d 474, 478-81 (10th Cir. _____________________________ 1996) (collecting and discussing cases from other circuits); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cohen, 62 F.3d ___________________________________________ _____ 381, 383-84 (11th Cir. 1995); PaineWebber Inc. v. Hoffman, ________________ _______ 984 F.2d 1372, 1378 (3d Cir. 1993); Roney and Co. v. Kassab, _____________ ______ 981 F.2d 894, 898-900 (6th Cir. 1992); Edward D. Jones & Co. ______________________ v. Sorrells, 957 F.2d 509, 512-13 (7th Cir. 1992).  ________ In essence, these decisions rest on an asserted "plain language" interpretation of section 15: because the rule provides that claims over six years old are not "eligible for submission" to arbitration, these circuits ________ __________ conclude that it limits the jurisdiction of the arbitrator, and consequently, any question about the application of the rule to the facts of a particular case is for the courts. Having characterized the time bar as an "arbitrability" issue presumptively for the courts under AT&T and First Options, ____ _____________ these circuits, examining agreements substantially identical to the Elahis', find no clear evidence of an intent to arbitrate the time-bar issue.  In our view, the language of section 15 is not plain and unambiguous. Section 15 of the NASD Code does not  ____________________ 8. Some of the cited cases involve an identical time-bar rule of the New York Stock Exchange, and we see no reason to distinguish the cases. Furthermore, none of the cases turn on the minor variations in the language of the arbitration clauses in the broker-client agreements. -19- 19 speak to who decides the applicability of the time bar. ___ Section 15 does not plainly create a question of "arbitrability," because it does not address whether the basic subject matter of the dispute is within the scope of the arbitration clause. One could credibly view section 15 as analogous to a statute of limitations rather than a "substantive eligibility requirement." Courts have often held that timeliness issues are for the arbitrator to decide, so the mere fact that the rule creates a time-based bar to successful assertion of a claim does not by itself create an "arbitrability" issue for the court. See Moses H. Cone, 460 ___ _____________ U.S. at 24-25 (1983); Local 285, Serv. Employees Int'l Union _______________________________________ v. Nonotuck Resource Assocs., Inc., 64 F.3d 735, 739-40 (1st _______________________________ Cir. 1995); O'Neel v. National Ass'n of Secs. Dealers, Inc., ______ ______________________________________ 667 F.2d 804, 807 (9th Cir. 1982). The Seventh Circuit's analysis relied in part on a 1988 letter written by an NASD staff attorney stating that "the NASD will not process a claim that falls wholly outside the six year period," finding the letter to be an indication that section 15 is an eligibility requirement that must be decided by the courts. See PaineWebber Inc. v. Farnam, 870 ___ ________________ ______ F.2d 1286, 1292 (7th Cir. 1989). In our view, reliance on the NASD staff attorney's letter is misplaced. There is no assurance that the letter represented the position of the -20- 20 NASD at the time. More importantly, it does not reflect the current view of the NASD. Recently, the NASD has concluded that section 15 is silent on whether courts or arbitrators ______ decide if an action is time-barred. The NASD has proposed an amendment to section 15 which would provide that the NASD Director of Arbitration would make the eligibility determination under the six-year time-bar rule. 59 Fed. Reg. 39,373, 39,373-74 (July 26, 1994), quoted in Cogswell, 78 _________ ________ F.3d at 479.9 The NASD, explaining the amendment's purpose, stated that "Section 15 does not specify who has the authority to determine if a claim is eligible for submission to arbitration." Id. The NASD's 1994 statement seriously ___ undermines the five-circuit majority's "plain language" rationale, as well as any reliance on the staff attorney's letter as an agency opinion entitled to some deference. In sum, we are not persuaded by the analysis of the five-circuit majority. ii. Four circuits say the arbitrator _________________________________________ decides _______  ____________________ 9. The NASD withdrew the proposed amendment in October 1994 based on concerns expressed in public comments, and is apparently still working "to develop a proposal acceptable to all parties concerned." Letter from Suzanne E. Rothwell, NASD Associate General Counsel, to Mark Barracca, Branch Chief, Division of Market Regulation of the Securities and Exchange Commission (Oct. 12, 1994). In our view, the withdrawal of the proposed amendment does not negate the significance of the NASD's statement in 1994 that section 15 does not specify who decides the applicability of the time bar.  -21- 21 Four circuits -- the Second, Fifth, Eighth, and Ninth -- take the view that the section 15 time bar is a matter for the arbitrator to decide. While we agree with the result these circuits reach, in our view, their varied analyses leave important questions unanswered.  In Smith Barney Shearson, Inc. v. Boone, 47 F.3d _____________________________ _____ 750, 753-54 (5th Cir. 1995), the Fifth Circuit drew a distinction between issues of "substantive arbitrability" and "procedural arbitrability." Given the broad arbitration clause between the parties in Boone, the court held that _____ section 15 raised timeliness issues that "are issues of procedural arbitrability and must be decided by the arbitrator."10 Id. at 754. ___  ____________________ 10. The Fourth Circuit, which has not decided the question presented here, appears to embrace the "substance vs. procedure" approach of the Fifth Circuit. In Miller v. ______ Prudential Bache Secs., Inc., 884 F.2d 128, 132 (4th Cir. _____________________________ 1989), cert. denied, 497 U.S. 1004 (1990), the court found ____________ that a clause in a broker-client agreement providing that "arbitration was to be conducted in accordance with the rules of the arbitration forum governed only arbitration procedure." The precise holding in Miller, though, was that ______ although the NASD's procedural rules made the NASD's anti- fraud provisions inapplicable, the NASD arbitrator was not barred from applying the anti-fraud provisions of other stock exchanges to which Prudential-Bache belonged. That result followed from the court's finding that the NASD arbitration rules related only to arbitration "procedure," and not the "substantive rules that may bear on the merits of the underlying dispute." Id. It would appear that the Fourth ___ Circuit's analytical approach (i.e., that the procedural ____ rules of the arbitral forum are incorporated into an arbitration agreement only to govern arbitration procedure) would lead to the same result with respect to the NASD time bar: the NASD Code of Arbitration Procedure, including section 15, is for the arbitrator to interpret and apply. -22- 22 The Eighth Circuit held that section 15 was for the arbitrator to apply, but declined to address whether the NASD time bar was procedural or substantive. FSC Secs. Corp. v. ________________ Freel, 14 F.3d 1310, 1312 n.2 (8th Cir. 1994). Instead, the _____ court in Freel determined that another provision of the NASD _____ Code of Arbitration Procedure, section 35, was a "clear and unmistakable expression" of the parties' intent to have the arbitrator decide the applicability of the section 15 time bar. Id. at 1312-13. Section 35 of the NASD Code of ___ Arbitration Procedure provides that "[t]he arbitrators shall be empowered to interpret and determine the applicability of all provisions under this Code." Id. at 1312. ___ Finally, and most recently, the Second Circuit held that the arbitrator decides the applicability of the time bar. In PaineWebber, Inc. v. Bybyk, 81 F.3d. 1193, 1196, _________________ _____ 1198-99 (2d Cir. 1996), the court assumed without analysis that the section 15 time bar presented an "arbitrability" question in the sense of AT&T and First Options. But the ____ _____________ court also found that the broad arbitration agreement ("any and all controversies which may arise concerning the account" were to be arbitrated) was clear and unmistakable evidence of the parties' intent to have the arbitrator determine arbitrability. Id. at 1199-200. In reaching the conclusion ___ that this intent was "clear and unmistakable," the court said, somewhat paradoxically, that it would construe any -23- 23 ambiguities against the drafter, PaineWebber. Id. at 1199. ___ The Bybyk court went on to say that it did not need to decide _____ whether the time bar was substantive or procedural, because it determined that the NASD rules were not effectively incorporated into the parties' agreement. Id. at 1201. But, ___ the court further stated, even if the NASD rules and the time bar had been incorporated, Section 35 (discussed above with the Eighth Circuit's Freel decision) clearly "commit[ted] all _____ issues, including issues of arbitrability and timeliness, to the arbitrators." Id. at 1202. Thus, the Second Circuit ___ relied on several alternative grounds to find that the time bar should be applied by the arbitrator. The Ninth Circuit has held that "the validity of time-barred defenses to enforcement of arbitration agreements should generally be determined by the arbitrator rather than the court. O'Neel v. National Ass'n of Secs. Dealers, Inc., ______ _____________________________________ 667 F.2d 804, 807 (9th Cir. 1982). But the O'Neel court was ______ applying a previous NASD five-year time limit for submission to arbitration, not the present section 15. Moreover, O'Neel ______ contains no analysis of the issue, as the Ninth Circuit simply adopted an earlier Second Circuit case, Conticommodity ______________ Services v. Phillip & Lion, 613 F.2d 1222, 1224-26 (2d Cir. ________ _______________ 1980), which has since been supplanted by the Second Circuit's more recent analysis in Bybyk, 81 F.3d at 1193. _____ Nonetheless, it appears that O'Neel is still good law in the ______ -24- 24 Ninth Circuit, and we believe the same result would obtain in that circuit with respect to section 15. b. Our analysis _______________ In our view, we must determine whether the parties intended the time bar to be an "arbitrability" issue, i.e., a ________ ____ threshold issue that must be decided by a court before there can be any arbitration. After all, the intent of the parties always controls what is to be arbitrated. AT&T, 475 U.S. at ____ 648. Given the existence here of a valid and broad arbitration clause covering "all controversies" concerning investment transactions "or the construction, performance or breach of this or any other agreement," did the parties intend that the time bar of section 15 should determine ______ "arbitrability" as that term is used in AT&T and First ____ _____ Options? _______ If the parties clearly intend that a particular issue must be resolved by the courts before there is any duty to submit to arbitration, then the courts must respect that intent by deciding the issue. See AT&T, 475 U.S. at 648. On ___ ____ the other hand, if it is ambiguous whether the parties intend a given issue to be an "arbitrability" issue, we must make a sensible presumption about their intent. Thus, if the parties have (1) entered into a valid arbitration agreement (satisfying First Options ________________ "arbitrability"), and (2) the arbitration agreement covers -25- 25 the subject matter of the underlying dispute between them (satisfying AT&T "arbitrability"), then we will presume that ____ the parties have made a commitment to have an arbitrator decide all the remaining issues necessary to reach a decision on the merits of the dispute. Put differently, the signing of a valid agreement to arbitrate the merits of the subject matter in dispute presumptively pushes the parties across the "arbitrability" threshold; we will then presume that other issues relating to the substance of the dispute or the procedures of arbitration are for the arbitrator. Cf. Moses ___ _____ H. Cone, 460 U.S. at 24-25. But, if the parties clearly and _______ unmistakably provide that an issue is one of "arbitrability" -- i.e., that the issue is a threshold matter that must be ____ determined before any adjudicative power will be granted to the arbitrator -- then the court must respect that clear expression of intent and decide that threshold issue, rather than compelling arbitration. This presumption about whether an issue goes to "arbitrability" is consistent with both the federal policy favoring arbitration and common sense about the likely intent of parties who have agreed to arbitrate the subject matter of the underlying dispute. We believe that parties who have agreed to arbitrate a given subject most likely intend and expect that the arbitrator should resolve all issues that -26- 26 arise concerning that subject; if they do not, we think they would clearly express their contrary intent. The presumption that we now adopt (i.e., that ____ issues other than (1) the existence of an arbitration agreement between the parties and (2) whether the subject matter of the underlying dispute is within the scope of the arbitration clause are presumptively not "arbitrability" issues) must not be confused with -- and in no way diminishes -- the presumption, established in AT&T and First Options, ____ _____________ that issues of arbitrability are normally to be decided by courts, not arbitrators. The presumption that we adopt today is about whether an issue is one of "arbitrability"; the _______ AT&T/First Options presumption is about who decides issues ____ _____________ ____________ that have been classified as "arbitrability" issues. The Court explained in First Options that parties _____________ are unlikely to have focused on the question of who should decide arbitrability, and therefore the courts should presume that they did not intend to submit arbitrability issues to an arbitrator. 115 S. Ct. at 1924-25. This is obvious where the "arbitrability" question is whether there is an agreement at all (as in First Options); certainly a party who did not _____________ sign the agreement did not consider who should decide arbitrability. This presumption (that arbitrability issues are for the courts) also makes sense where the subject matter of the dispute may be outside the scope of an otherwise valid -27- 27 agreement (as in AT&T); in such a case, the parties likely ____ believed that it was enough to exclude certain issues from the arbitration clause, and probably did not think about the arbitrator's power to decide whether a particular close case was excluded or not. On the other hand, where the parties have clearly agreed to arbitrate the subject of the underlying dispute between them, as the parties have here, it is unlikely that they intended other issues related to the dispute, such as the timeliness of the submission of the claim, to affect the "arbitrability" of the dispute. Such an intent is particularly unlikely where the arbitration clause is as broad as it is in this case. Thus, we presume that the parties here did not intend to make the section 15 time bar a threshold "arbitrability" question to be determined by the courts rather than an arbitrator. -28- 28 2. Did the parties clearly and unmistakably express ___________________________________________________ an intent to make the NASD time bar an ___________________________________________________ "arbitrability" issue? ______________________ Although we presume that the time bar was not intended to be an arbitrability issue, we do not stop there; we must look closely at the agreement between PaineWebber and the Elahis for any clear and unmistakable expression of an intent contrary to that presumption. We apply "general state-law principles of contract interpretation" to an arbitration agreement, but with "due regard" to the federal policy favoring arbitration. Volt, 489 U.S. at 475-76; see ____ ___ also First Options, 115 S. Ct. at 1924; Mastrobuono, 115 S. ____ _____________ ___________ Ct. at 1219 & n.9. As the parties have directed, we look to New York contract law. "[T]he court must ascertain the intent of the parties from the plain meaning of the language employed," and a "contract should be construed so as to give full meaning and effect to all its provisions." American ________ Express Bank Ltd. v. Uniroyal, Inc., 562 N.Y.S.2d 613, 614 __________________ _______________ (N.Y. App. Div. 1990), leave to appeal denied, 569 N.Y.S.2d ______________________ 611 (1991). A contract term is ambiguous if it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages, and terminology as generally understood in the particular trade or business." Walk-In _______ -29- 29 Med. Ctrs., Inc. v. Breuer Capital Corp., 818 F.2d 260, 263 ________________ ____________________ (2d Cir. 1987) (applying New York law). Our analysis of the agreement reveals no clear and unmistakable expression of intent that the NASD time bar should be an arbitrability issue, nor that the time bar's applicability should not be arbitrated. The agreement simply says that "arbitration shall be in accordance with the rules in effect of . . . [the NASD]."11 PaineWebber's argument that the time bar is an arbitrability issue centers on the "eligible for submission" language of section 15 ("No dispute, claim, or controversy shall be eligible for _____________ submission to arbitration under this Code where six (6) years __________ have elapsed . . . ."). PaineWebber asserts that the arbitrator is only empowered to act on claims that are "eligible for submission" to the NASD, thus someone else -- the court -- must decide if a claim is "eligible for submission."  ____________________ 11. The notion of the Elahis having an intent with regard to section 15 is somewhat artificial -- it seems unlikely that a small, private investor would have any specific knowledge of the NASD arbitration rules. But the parties here do not dispute that the NASD rules were effectively incorporated into their agreement, nor is there any argument that the agreement was an unconscionable contract of adhesion. Thus, by incorporation, the parties have committed to be bound by section 15, whether or not they even knew it existed, let alone understood what it meant. See Level Export Corp. v. ___ ___________________ Wolz, Aiken & Co., 111 N.E.2d 218, 221 (N.Y. 1953) (one who _________________ accepts a contract is deemed to know its contents). -30- 30 As we concluded earlier in our analysis of whether the time bar presented an arbitrability issue, PaineWebber's view is plausible, but it is not the only plausible interpretation of this phrase. "Submission to arbitration" could mean submission for full adjudication of the merits, rather than submission for preliminary determinations, such as whether the claim is time-barred, or whether the appropriate fee was paid, or whether the claim was submitted on the proper forms. The NASD itself recently stated, as we have noted, that "Section 15 does not specify who has the authority to determine if a claim is eligible for submission to arbitration." 59 Fed. Reg. 39,373, 39,373-74, quoted in _________ Cogswell, 78 F.3d at 479-80. Thus, we conclude, as did the ________ NASD itself, that the "eligible for submission" language in section 15 is not a clear expression of intent to make timeliness an arbitrability issue. A number of other considerations support our conclusion that section 15 was not clearly intended to be an arbitrability issue for judicial determination.12 First,  ____________________ 12. We choose not to rely on another line of precedent that would justify our decision. In John Wiley & Sons, Inc. v. ________________________ Livingston, 376 U.S. 543, 555-59 (1964), the Supreme Court __________ held that the effect of a four-week time limit for the submission of grievances was a matter for the arbitrator, not the court. The CBA in Wiley provided that "[t]he failure by _____ either party to file the grievance within this time limitation shall be construed and be deemed to be an abandonment of the grievance." Id. at 556 n.11. The ___ employer argued that no duty to arbitrate had arisen because of the union's failure to timely file its grievance. Id. at ___ -31- 31 the existence of NASD Code section 35, empowering the arbitrator to "interpret and determine the applicability of all provisions under this Code," strongly undercuts any argument that the parties intended the section 15 time bar to be an arbitrability issue to be decided only by the courts. See Bybyk, 81 F.3d at 1202; Freel, 14 F.3d at 1312. ___ _____ _____ Second, the section 15 time bar is part of the NASD Code of Arbitration Procedure, thus one would assume it is intended to be applied by the NASD itself to control its own  ____________________ 556. The Court explained that "[o]nce it is determined, as we have, that the parties are obligated to submit the matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." Id. at 557. ___ Recently, we followed Wiley in Local 285, Serv. _____ _________________ Employees Int'l Union v. Nonotuck Resource Assocs. Inc., 64 ______________________ _______________________________ F.3d 735, 739-40 (1st Cir. 1995). The CBA in Nonotuck ________ required grievances to be presented within fifteen days of the occurrence, and provided that "[t]he time limits provided in this article are conditions precedent for the filing and processing of grievances under this Article." Id. at 739. ___ The employer argued that late-filed grievances were expressly excluded from arbitration, and that under AT&T, 450 U.S. at ____ 650, the arbitrability of the grievance was a matter for the court, not the arbitrator. Nonotuck, 64 F.3d at 739-40. We ________ rejected that argument, explaining that the employer "misapprehend[ed] the distinction between substantive and procedural arbitrability." Id. We stated that "the fact ___ that something is a condition precedent to arbitration does not make it any less a procedural question" to be determined by the arbitrator. Id. (internal quotation marks omitted). ___ The Wiley and Nonotuck decisions could be neatly _____ ________ applied to this appeal, but we think that simply labelling timeliness issues as "procedural," and thus for the arbitrator, does not give due regard to the parties' contractual intent. If the parties expressly intend a timeliness issue (or other procedural issue) to be an "arbitrability" issue that the arbitrator cannot decide, then we must respect that contractual intent. Thus, we think our analysis better reflects the primacy of the parties' intent. -32- 32 procedures, rather than a rule that is somehow "off-limits" for arbitrators to apply. Third, the NASD rules only come into play after the NASD has been chosen as the arbitral forum. Although the other potential forums specified in the parties' arbitration clause appear to have a nearly identical six-year time bar, they might, in theory, have very different time-bar rules, with different time periods, or different language (perhaps phrased in terms of "eligibility for submission," perhaps not). If other forums did have differently phrased rules, the question whether timeliness presented an "arbitrability" issue would depend on which of the potential arbitral forums was chosen. If the parties intended to make a time bar a threshold issue for judicial, rather than arbitral, determination, it seems unlikely that they would do so through such potentially unreliable means. III. III. ____ Conclusion Conclusion __________ Because the parties agreed to arbitrate "all controversies" concerning investment transactions, as well as controversies concerning the construction, performance, and breach of the arbitration agreement, we presume that they intended to arbitrate the timeliness of the submission of this dispute about investments. Finding no clear expression of an intent contrary to our presumption, we hold that the -33- 33 interpretation and application of the six-year time bar of section 15 is a matter for the arbitrator. Accordingly, the judgment of the district court is affirmed. Costs to affirmed Costs to ________ _________ appellees. appellees. __________ -34- 34