Freedom Springs Water v. Great Spring CV-98-676-JD  08/06/99
UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

<u>Freedom Springs Water Co., Inc.</u>

     v.                                    Civil No. 98-676-JD

<u>Great Spring Waters of America, Inc.</u>


                         O R D E R

     Freedom Springs Water Company seeks a stay of arbitration of its contract disputes with Great Spring Waters of America.  In support of a stay, Freedom Springs argues that the arbitration clause in the parties' agreement does not cover the breach of contract issues presently before the arbitrator.  Great Spring objects, contending that the arbitration clause in the parties' agreement requires arbitration of all of the issues currently in arbitration, including the breach of contract claims.

     During a conference call on the status of the case, the parties agreed to address the scope of the arbitration clause in a motion for partial summary judgment and an objection.  Great Spring has filed a motion for summary judgment asking the court to deny Freedom Springs's motion for a stay of arbitration, based on the meaning of the arbitration clause.  Freedom Springs filed an objection.  As the parties agree that the question of the arbitrability of the breach of contract issues may be resolved as a matter of law, the court will address both the plaintiff's

motion to stay arbitration (document no. 2) and the defendant's motion for summary judgment (document no. 30) together.[1]

## Background[2]

The plaintiff, Freedom Springs Water Company, operates natural water springs in Freedom, New Hampshire. The defendant, Great Spring Water of America, which is a division of Perrier Company, is in the business of buying and distributing bottled water. The parties entered a contract, dated January 6, 1996, under which Freedom Springs agreed to supply water and Great Spring agreed to purchase water, based on certain conditions, for a ten year period. The agreement provided that Great Spring would construct facilities for pumping and piping water from Freedom Springs and be repaid for the development costs through rebates on the water purchased from Freedom Springs. The agreement also required that Freedom Springs's water meet specified quality standards.

The facilities at Freedom Springs began producing water for

---

[1]The parties' requests for oral argument are denied as additional argument is not likely to be of assistance to the court and the parties failed to submit a written statement justifying their requests. See LR 7.1(d).

[2]The background facts are provided as a factual summary of the parties' relationship and not as factual findings.

Great Spring in June of 1996. A temporary interruption occurred in August of 1996 when the water from Freedom Springs's facility tested for bacteria in excess of the agreed quality standards. In March of 1997, the property where Freedom Springs operates was accidentally flooded, and the springs contaminated. The parties then disputed whether the quality of Freedom Springs's water met their agreed standards. Freedom Springs alleges that Great Spring stopped making payments in October of 1997.

Freedom Springs, represented by one of its principals, William Foord, filed a demand for arbitration on May 2, 1998, asking that issues about payments, indemnification, exclusivity, water quality and testing, and notice be arbitrated as provided in the parties' agreement. Great Spring notified Freedom Springs on May 7, 1998, that the agreement was terminated. Great Spring filed its answer in the arbitration proceeding with counterclaims seeking repayment of money spent in developing Freedom Springs's facilities and damages for breach of the parties' agreement. The arbitrator held a series of telephone conferences in August and September of 1998 and ordered the parties to provide certain discovery and to submit statements of the issues they intended to arbitrate.

On October 13, 1998, after his attorney reviewed the materials submitted in the arbitration proceeding, William Foord

submitted a restatement and amendment of the issues Freedom Springs wanted to arbitrate in response to Great Spring's counterclaims. Freedom Springs's amendments asserted breach of contract claims against Great Spring and sought additional damages. The arbitrator's order dated October 27, 1998, indicates that Freedom Springs withdrew its October 13 pleading and, instead, asserted claims in an October 26 pleading, that does not seem to be included in the record. On November 3, the arbitrator dismissed several of Freedom Springs's claims in response to a motion by Great Spring.

In early November, Foord moved for a continuance in the arbitration proceeding, explaining that his attorney was no longer able to represent Freedom Springs and asking for time to find new counsel. On November 30, 1998, Freedom Springs's new counsel moved for a ninety day continuance of the arbitration hearing scheduled for December 9, 10, and 11, 1998. Freedom Springs filed the action in this court on December 7, 1998, alleging a breach of contract claim against Great Spring and seeking temporary and permanent stays of the arbitration proceeding. The parties then stipulated to a temporary stay pending the decision on Freedom Springs's motion for a preliminary injunction.

4

### Discussion

The parties do not dispute that they agreed to arbitrate some issues, although they differ as to whether their arbitration agreement applies to all of the issues being considered in their current arbitration proceeding. The Federal Arbitration Act ("FAA") applies to this case. See 9 U.S.C.A. § 2. Unless the parties clearly agreed to arbitrate the issue of arbitrability of their dispute, the court decides whether the parties' dispute is subject to their arbitration agreement. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944-46 (1995). The parties did not clearly agree to arbitrate the meaning of the arbitration clause in this case, nor has either party argued that the agreement provided for arbitration of the meaning of the clause.

Courts may stay arbitration that is not authorized by the parties' agreement. See 9 U.S.C.A. § 4; see also PCS 2000 L.P. v. Romulus Telecomm. Inc., 148 F.3d 32, 25 (1st Cir. 1998); Gruntal & Co. v. Steinberg, 854 F. Supp. 324, 331 (D.N.J. 1994). The FAA indicates that "arbitrability is to be determined on an issue-by-issue basis, without regard to the way that the issues are grouped into claims." Summer Rain v. Donning Co., 964 F.2d 1455, 1461 (4th Cir. 1992).

A. The Parties' Arbitration Agreement

Freedom Springs challenges the arbitrability of the breach of contract issues that have been submitted for arbitration. The arbitration clause in the parties' agreement provides:

> In order to resolve any dispute under this agreement quickly and efficiently, at the minimum cost and expense, the parties agree that in the event a dispute arises under the terms of this Agreement, in connection with fact or interpretation and meaning thereof, those limited issues shall be submitted to arbitration under the Rules of the American Arbitration Association, established by the American Arbitration Association in the City of Boston.

Water Supply Agreement at ¶ 13.4. Freedom Springs argues that the clause limits arbitration to disputes arising while the agreement was in effect and does not apply to claims of breach of the entire agreement that have arisen since Great Spring terminated the agreement. Great Spring asserts the strong policy of the FAA to resolve doubt in favor of arbitrability and argues that the terms of the arbitration clause permit arbitration of the parties' breach of contract claims.

The FAA demonstrates a strong federal policy in favor of arbitration. Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Arbitration is available, however, only by agreement, and, therefore, no party can be compelled to arbitrate disputes or issues that are not part of the parties' agreement. See 9 U.S.C.A. § 2; Volt Info. Sciences, Inc. v.

6

Board of Trustees of Leland Stanford, Jr. Univ., 489 U.S. 468, 479 (1989). McCarthy v. Azure, 22 F.3d 351, 354 (1st Cir. 1994). "That is because a party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of its dispute (say, as here, its obligation under a contract)." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942 (1995). Whether a particular dispute is subject to arbitration depends on the parties' intent as demonstrated by their agreement. See PaineWebber Inc. v. Elahi, 87 F.3d 589, 593 (1st Cir. 1996).

State law provides the basic principles of contract interpretation, although state arbitration law is not applicable to FAA cases. See PaineWebber, 87 F.3d at 593. The interpretation of the arbitration clause is controlled by Maine law. Maine follows the common principles of contract interpretation that language is construed according to its plain and common meaning taken in the context of the entire contract. See Apgar v. Commercial Union Ins. Co., 683 A.2d 497, 498 (Me. 1996); Brackett v. Middlesex Ins. Co., 486 A.2d 1188, 1190 (Me. 1985). A contract provision is ambiguous only if it is "reasonably susceptible to two or more interpretations, or its meaning is unclear." Waltman & Co. v. Leavitt, 722 A.2d 862, 864 (Me. 1999). In addition to state law interpretive rules, analysis of

7

an arbitration clause "is informed by FAA jurisprudence." <u>Id.</u>

Great Spring argues that the arbitration clause's introductory phrase, "In order to resolve any dispute under this agreement," plainly expresses a broad and comprehensive scope of the agreement. Freedom Springs, however, correctly points out that the arbitration clause expressly applies to "limited issues." The clause explains that the "limited issues" for arbitration are disputes under the agreement about facts or the meaning of the agreement. Great Spring says that the issues in arbitration fall within that definition, while Freedom Springs says they do not.

Taken in the context of the whole arbitration clause, "any dispute" is limited to "any dispute under this agreement . . . in connection with fact or interpretation and meaning of [the agreement]." Language limiting arbitration to disputes arising under the agreement has been interpreted as a narrow provision compared to a broad provision to arbitrate all disputes. <u>See</u> <u>McCarthy</u>, 22 F.3d 351, 358 (1st Cir. 1994); <u>see also</u> <u>New York News Inc. v. Newspaper Guild of New York</u>, 927 F.2d 82, 83-84 (2d Cir. 1991). The presumption in favor of arbitrability has less force in cases where the parties have limited their agreement to arbitrate specific disputes or issues. <u>See</u> <u>McDonnell Douglas Finance v. Pa. Power & Light Co.</u>, 858 F.2d 825, 832 (2d Cir.

8

1988).  Nevertheless, disputes "under this agreement" could include breach of contract issues if the issues were not further limited.

Freedom Springs argues that the phrases "under this agreement" and "under the terms of this Agreement" limit arbitrable issues to those arising during performance and before breach and termination of the agreement.  Unless an arbitration clause expressly limits its application to the life of the agreement, however, the clause continues to apply to arbitrable disputes that arise under the terms of a terminated agreement even if the events occur after termination.  See, e.g., Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union, 430 U.S. 243, 255 (1977); Riley Mfg. Co. v. Anchor Glass Container Corp., 157 F.3d 775, 781 (10th Cir. 1998); Cincinnati Typographical Union No. 3 v. Gannett Satellite Infor. Network , Inc., 17 F.3d 906, 910 (6th Cir. 1994); Sweet Dreams Unltd. v. Dial-A-Mattress Internat'l, 1 F.3d 639, 643 (7th Cir. 1993).  Therefore, "under this agreement" does not limit arbitration to issues that arose during performance of the agreement.

The arbitration clause limits arbitration to "any dispute under this agreement . . . in connection with fact or interpretation and meaning of [the agreement]."  Therefore, based on the expressed intent in the clause, the parties agreed to

9

arbitrate issues about facts or the meaning of the agreement that arise from disputes under the agreement. The question that must be resolved is whether the issues raised in the parties' arbitration proceeding are within the scope of their arbitration agreement. Although Great Spring argues that all of the issues in arbitration are arbitrable, the list Great Spring provides merely cites factual disputes pertinent to the agreement, without reference to the parties' underlying claims, and avoids the issues of obligation, liability, remedies, and damages in the breach of contract claims. Neither party has provided a list or summary of all of the claims and issues that are currently pending in the arbitration proceeding.

The record is unclear as to the status of Freedom Springs's claims for arbitration. Freedom Springs initially filed nine issues in its demand for arbitration eight of which state disputes under particular provisions of the parties' agreement and the ninth states a claim of promissory estoppel. The claims for relief seek payment of money allegedly owed under the agreement and compliance with other terms of the agreement. Freedom Springs filed a restatement or amendment of its issues, dated October 13, 1998, adding claims for breach of contract and seeking damages. The arbitrator's order of October 27, 1998, indicates that Freedom Springs filed a subsequent submission,

10

which is not included in the record, that withdrew the claims added on October 13, but sought to substitute certain other language that was indicated in brackets. The arbitrator ruled, "Such bracketed sections only may be added as amendments to Claimant's previous statement of claims." Order of October 27, 1998. On November 3, 1998, in response to Great Spring's motion for summary disposition, the arbitrator dismissed Freedom Springs's claims in paragraphs 2, 4, 8, and 9, apparently referring to the original filing of issues.

In the meantime, Great Spring filed its answer with three counterclaims. The first claim seeks recoupment of costs as provided in section 3.1 of the agreement. The second is a breach of contract claim seeking damages. The third claim states that Freedom Springs failed to comply with section 4.1 of the agreement requiring it to obtain and maintain permits that resulted in insecurity and costs to Great Spring. In sum, it appears that some of the issues before the arbitrator raise only factual disputes, which are arbitrable, while the breach of contract claims and counterclaims, raise issues of liability and damages that are not arbitrable.

Since the parties agreed to arbitrate factual issues pertinent to disputes under the agreement and issues about the meaning of the agreement, the arbitration proceeding is limited

11

to those issues.  The parties did not agree to arbitrate legal liability or the imposition of remedies or damages.  Once the fact and meaning issues are arbitrated, either party may resort to the judicial process to resolve any claims for breach of contract, damages, or enforcement of the contract terms.  Of course, once the pertinent facts and the meaning of disputed parts of the agreement are determined, liability and the likely remedies should be readily apparent so that further proceedings may not be necessary.

B. <u>Waiver</u>

Great Spring contends, in opposition to Freedom Springs's motion for a stay of arbitration, that Freedom Springs waived any objection to the arbitrability of the issues raised in the arbitration proceeding by initiating arbitration and filing breach of contract claims in the proceeding.  In general, a party has been deemed to have waived an objection to arbitration if the party participates extensively in the proceedings and raises an objection only after an unfavorable result.  <u>See, e.g.</u>, <u>ConnTech Dev't Co. v. University of Connecticut Educ. Prop., Inc.</u>, 102 F.3d 677, 685 (2d Cir. 1996); <u>Raytheon Co. v. Automated Business Sys. Inc.</u>, 882 F.2d 6, 8 (1st Cir. 1989); <u>Mantle v. Upper Deck Co.</u>, 956 F. Supp. 719, 735 (N.D. Tex. 1997).  The First Circuit

12

also has required a showing of prejudice by the opposing party as a predicate to finding a waiver. See Menorah Ins. Co., Ltd. v. INX Reinsurance Corp., 72 F.3d 218, 221 (1st Cir. 1995).

Since the parties do not dispute that they agreed to arbitrate at least some issues, the mere initiation of arbitration does not waive an objection to arbitration that Freedom Springs's contends is not authorized by their agreement. Cf. Nghiem v. NEC Electronic, Inc., 25 F.3d 1437, 1440 (9th Cir. 1994) (finding waiver after party initiated and substantially completed arbitration before asserting lack of arbitrator's authority). Freedom Springs initially raised claims in the arbitration proceeding that it now contends are not arbitrable and did not immediately object to Great Spring's counterclaims. Before the hearings in the arbitration proceeding began, however, Freedom Springs sought to withdraw some of its own claims and moved for a continuance to settle the issue of arbitrability. On the current record, Great Spring has not shown either that Freedom Springs acquiesced in arbitration of the challenged issues until it received an unfavorable result, or that it has been prejudiced by Freedom Springs's conduct in the arbitration proceeding.

Because the parties anticipated a need for discovery on the waiver issue, it may be premature to resolve the waiver issue

13

based on the current record.  For that reason, the issue of waiver may be raised again, if necessary, in opposition to any further court proceedings after the arbitration proceeding has concluded.

C.  Disposition

Since in the opinion of the court the scope of the arbitration clause is clear, no further litigation is necessary to resolve its meaning.  Freedom Springs's motion to stay arbitration is granted as to arbitration of any issues other than the facts pertinent to disputes under the agreement or the meaning of the agreement.  Thus, arbitration is stayed as to the disposition of the parties' legal obligations or liability and imposition of damages or other remedies.  The motion to stay is denied as to arbitration of all factual issues pertinent to disputes under the agreement and the meaning of the agreement.

Conclusion

For the foregoing reasons, the defendant's motion for summary judgment (document no. 30) is granted in part and denied in part as to the meaning of the arbitration clause.  The plaintiff's motion for a stay of arbitration (document no. 2) is

14

granted in part as is explained in this order.  As no further issues remain to be decided in this case, the clerk of court is directed to enter judgment imposing a stay of arbitration as defined in this order and to close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

August 6, 1999

cc:   Donald L. Wyatt Jr., Esquire
      Kelly A. McEnaney, Esquire

15